**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHONELLE JACKSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:13-cv-731-WKW** |
| **KIM T. THOMAS, Commissioner,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ANSWER TO PETITION FOR WRIT OF *HABEAS CORPUS***
**BY PRISONER IN STATE CUSTODY UNDER SENTENCE OF DEATH (DOC. # 1)**

COMES NOW Respondent Kim T. Thomas, by and through the Attorney

General of the State of Alabama, and answers the Amended Petition for Writ of

*Habeas Corpus* (the "Petition") (Doc. # 1) filed on behalf of Shonelle Jackson

(hereinafter "Jackson"), as follows:

## I.   RESPONSE TO INTRODUCTION

1.     Paragraph 1 of the Petition is admitted.

2.     Paragraph 2 of the Petition is admitted.

3.     Paragraph 3 of the Petition is denied, except that Respondent admits

Petitioner Jackson was charged with the commission of a murder during the course

of a robbery and that the trial court entered the motion *in limine* referenced in

Paragraph 3 of the Petition.

4.     Paragraph 4 of the Petition is denied, except Respondent admits that

ALA. CODE § 15-12-21 (1975) as it existed at the time of Jackson's trial, limited

"out of court" compensation for indigent defense counsel to $1,000.00 per phase of trial.

5.      Paragraph 5 of the Petition is denied, except that Respondent admits the jury recommended a sentence of life without parole by a vote of 12-0.

6.      Paragraph 6 of the Petition is denied, except that Respondent admits that Petitioner was 18 and the trial court imposed a sentence of death in this case.

7.      Paragraph 7 of the Petition is denied.

## II.      RESPONSE TO PROCEDURAL HISTORY

8.      Paragraph 8 of the Petition is admitted.

9.      Paragraph 9 of the Petition is admitted.

10.     Paragraph 10 of the Petition is denied, except the Respondent admits the evidence at trial evidenced a capital murder during a robbery and further admits that the trial court granted a motion *in limine* excluding irrelevant and inadmissible evidence.

11.     Paragraph 11 of the Petition is denied, except Respondent admits that Petitioner sought a continuance to secure the appearance of Gerard Burdette, which was denied by the trial court.  Respondent further notes that the Alabama Court of Criminal Appeals explicitly found the representation that Burdette's statement referenced a motive for the killing as retaliation for a bad drug deal "is refuted by the record and is without merit."  *Jackson v. State*, 836 So.2d 915, 939 n.4 (Ala.

Crim. App. 1999). *See also*, *Ex parte Jackson*, 836 So.2d 979, 986 (Ala. 2002) ("[T]he statement of Gerard Burdette, a passenger in the automobile with the victim at the time of the murder…did not indicate that the murder was related to drug activity. Nothing in the record, other than defense counsel's speculation, supports Jackson's theory that the killing was the result of a drug deal gone 'bad.'").

12.     Paragraph 12 is denied, except Respondent admits the jury found Jackson guilty of capital murder and theft on February 27, 1998, and that the jury recommended life without parole by a vote of 12-0.

13.     Paragraph 13 is denied, except Respondent admits the trial court rejected the jury's sentencing recommendation and sentenced Petitioner Jackson to death.  The sentencing order contained in the record speaks for itself.

14.     Paragraph 14 is admitted.

15.     Paragraph 15 is admitted.

16.     Paragraph 16 is admitted.

17.     Paragraph 17 is admitted.

18.     Paragraph 18 is admitted.

19.     Paragraph 19 is admitted.

20.     Paragraph 20 is admitted.

21.     Paragraph 21 is admitted.

22.    Paragraph 22 is admitted.

23.    Paragraph 23 is admitted.

24.    Paragraph 24 is admitted.

25.    Paragraph 25 is admitted.

26.    Paragraph 26 is admitted.

27.    Paragraph 27 is denied, except Respondents admit the trial court used portions of a proposed order submitted by the State of Alabama after both parties were given the opportunity to submit proposed orders.

28.    Paragraph 28 is admitted, except Respondent denies the quoted section of the trial court's order.  The trial court stated it did not find "any strong evidence of juror misconduct."  (Vol. 22, Tab # R-68, C. 7)

29.    Paragraph 29 is admitted.

30.    Paragraph 30 is admitted.

## III.    RESPONSE TO GROUNDS SUPPORTING PETITION FOR RELIEF

## A.    THE TRIAL COURT PROPERLY EXCLUDED THE SPECULATIVE EVIDENCE PROPOSED BY PETITIONER JACKSON. (PARAGRAPHS 31-38)

31-38.  This ground for relief is answered as follows:

A.    In resolving the issue presented, the Alabama Supreme Court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

4

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on the merits pursuant to "plain error" review and rejected by the Alabama Supreme Court and Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Ex parte Jackson*, 836 So.2d 979, 985-986 (Ala. 2001) (Vol. 37, Tab # R-94); *Jackson v. State*, 836 So.2d 915, 929-931 (Ala. Crim. App. 1999) (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

D.    The Alabama Court of Criminal Appeals examined this claim solely for "plain error" based on the failure of Jackson to preserve the issue at trial. *Jackson v. State*, 836 So.2d at 930 (Vol. 37, Tab # R-90).  *See also*, *Ex parte Jackson*, 836 So.2d at 986. (Vol. 37, Tab # R-94)  The court further found no error based on Jackson's failure to make an offer of proof as to what his testimony would be in regard to the contested evidence.  *Id*. at 930-931.  These findings regarding issue preservation for appellate review are matters of state procedural law and beyond the scope of *habeas corpus* review.

E.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 31 through 38 are denied, except for those matters established by the state court record.

In resolving this issue, the Alabama Court of Criminal Appeals reached the merits of Jackson's claim under "plain error" review.  The court wrote:

> We have reviewed the motion in limine, the defense's response, the discussions about the motion, and the remaining evidence in this case. Based on that review, we do not find any plain error in this regard. The allegation that the murder was committed in retaliation for a bad drug deal was not presented until after the State had filed its motion in limine. The appellant did not mention a bad drug deal in his statements to the police and, in fact, he stated that he did not know the victim. Furthermore, Burdette, Barnes, Williams, and Rudolph did not mention anything about a bad drug deal in their statements. Instead, the appellant made this allegation only after the State had filed its motion in limine. Furthermore, the appellant only speculated that some of the witnesses might have known that the victim was a drug dealer and that they might testify that the victim was

6

killed because of a bad drug deal. Likewise, he did not make an offer of proof as to what the appellant's testimony in this regard would be. Finally, the trial court would have reconsidered its ruling before the trial began if the appellant had informed it that he intended to testify. If the court had changed its ruling, the appellant could have cross-examined witnesses and testified about the alleged bad drug deal. However, the appellant did not inform the trial court that he intended to testify and, in fact, did not raise the issue concerning the motion in limine again. For these reasons, we reject the appellant's claims.

*Jackson*, 836 So.2d 930-931 (Vol. 37, Tab # R-90).  The Alabama Supreme Court

further reviewed this claim, writing:

Jackson contends that the trial court erred in granting the State's motion in limine because, he says, its doing so improperly prevented him from presenting evidence that the motive for the murder was retaliation for a drug deal that had gone "bad," not robbery as the State alleged. He argues that by granting the State's motion, the trial court prevented him from testifying, from cross-examining witnesses, and from presenting mitigation evidence.

A motion in limine is the proper method by which to prohibit the introduction of irrelevant evidence. *Wiley v. State,* 516 So.2d 812, 814 (Ala.Crim.App.1986), rev'd on other grounds, 516 So.2d 816 (Ala.1987). The decision to grant or deny such a motion rests within the sound discretion of the trial court and that decision will not be overturned on appeal absent an abuse of discretion. *Id.* The test for relevancy is whether the evidence "bears any logical relationship to the ultimate inference for which it is offered." *Aetna Life Ins. Co. v. Lavoie,* 470 So.2d 1060, 1078 (Ala.1984); see also C. Gamble, *McElroy's Alabama Evidence* § 21.01(1) (5th ed.1996); *Garner v. State,* 606 So.2d 177 (Ala.Crim.App.1992).

The State filed a pretrial motion in limine requesting that Jackson be prevented from presenting evidence that the victim was involved in drug activity, because, it argued, such evidence

was immaterial and irrelevant to the case. In response, Jackson argued that the victim's drug activity went to the reason for the confrontation between Jackson, his codefendants, and the victim and that evidence of that activity was, therefore, relevant. After holding a hearing on the motion, the trial court granted the State's motion. On the day of trial, Jackson's counsel asked the court to reconsider its ruling because Jackson might decide to testify. The trial court indicated that it would reconsider its ruling if Jackson decided to testify.[3] Jackson did not testify, and his counsel did not raise the issue again and did not later ask the court to reconsider its ruling. Because the trial court stated that it would reconsider its ruling, the ruling on the motion in limine was not a final order and the issue was not preserved for appeal. See *Perry v. Brakefield,* 534 So.2d 602 (Ala.1988); *Evans v. Fruehauf Corp.,* 647 So.2d 718 (Ala.1994). Therefore, we review this issue under the plain-error rule. Rule 45A, Ala.R.App.P.

Nothing in the record supports Jackson's contention that the offense was the result of a drug deal gone "bad." The record indicates that the victim's wife informed the police that her husband was a small-time dealer of crack cocaine. However, neither Jackson nor the codefendants mentioned a drug deal gone "bad" in their statements to law-enforcement officers after the offense. At the hearing, defense counsel stated that he wanted to cross-examine certain witnesses about the victim's being a drug dealer to determine *if* those witnesses would testify that the victim had been killed as the result of a "bad" drug deal. Defense counsel merely speculated that there was a potential for such testimony; nothing in his proffer indicates that evidence existed to support this theory. While the statement of Gerard Burdette, a passenger in the automobile with the victim at the time of the murder, did refer to "gang" activity, the statement did not indicate that the murder was related to drug activity. Nothing in the record, other than defense counsel's speculation, supports Jackson's theory that the killing was the result of a drug deal gone "bad." Speculation and conjecture do not establish relevant evidence of the existence of a viable defense. Therefore, we hold that the trial court's grant of the State's motion in limine did not constitute error, plain or

otherwise.

*Jackson*, 836 So.2d at 985-987 (Vol. 38, Tab # R-94).

In this Court's Order of October 10, 2013, this Court placed upon Respondents the task of identifying United States Supreme Court cases upon which Respondents contend the state courts relied in resolving Petitioner's claims.  (Doc. # 3, pp. 1-2)   Respectfully, this Order is contrary to the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), as the Petitioner is prohibited from receiving relief unless *he* shows that the adjudication in the state courts was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States or was the result of an unreasonable determination of the facts.   28 U.S.C.  §  2254(d) ("An application…**shall not be granted**…") (emphasis added).   In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the Court made it clear that state courts do not have to identify in their opinions the United States Supreme Court cases upon which they rely as the burden is on a *habeas* petitioner to satisfy 28 U.S.C. § 2254(d). According to the Court, "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, *could have supported*, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."   *Harrington*, 131 S.Ct. at 786 (emphasis added).

Accordingly, Respondents object to that portion of this Court's October 10, 2013 Order (Doc. # 3) that could be read as reversing the burden of persuasion and production in this proceeding, or otherwise reducing the great deference owed the state court resolutions of Jackson's claims.

To aid this Court in reaching the proper resolution of Petitioner Jackson's claim, however, Respondent's offer the following response to the United States Supreme Court cases cited in Petitioner Jackson's brief in support of this claim. Because Petitioner Jackson is prohibited by § 2254(d)(1) from obtaining relief absent a showing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, this Court's inquiry should be limited to those cases identified by Jackson in his Petition: *Washington v. Texas*, 388 U.S. 14 (1997); *Taylor v. Illinois*, 484 U.S. 400 (1988); *Chambers v. Mississippi*, 410 U.S. 284 (1973); *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Davis v. Alaska*, 415 U.S. 308 (1974); *Harris v. New York*, 401 U.S. 222 (1971).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *Bell v. Cone,* 535 U.S. 685, 694

(2002).   A state court decision involves an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle" from the relevant Supreme Court decisions "but unreasonably applies it to the facts of the particular case." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). The Supreme Court has further noted that "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams,* 529 U.S. at 410. Petitioner Jackson cannot prevail under these standards.

Jackson's reliance on *Washington* and *Valenzuela-Bernal* is misplaced. In *Valenzuela-Bernal*, the Court noted that to raise a valid compulsory process claim a defendant must show that the requested witnesses would be material and favorable. *Valenzuela-Bernal*, 458 U.S. at 872. Initially, Jackson's reliance on these cases fails because they deal with a defendant's right to compulsory process, an issue outside the scope of this claim. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006) ("Clearly established" for § 2254(d)(1) purposes refers to the holdings of the Supreme Court, not dicta in its decisions).[1] Further, Jackson's reliance on these cases fails because the state court specifically found that Jackson did not make an offer of proof as to the proffered evidence and the statements of the witnesses

---

[1] It is for this reason Jackson's citation of *Kyles v. Whiltey*, 514 U.S. 419 (1995) is unavailing. *Kyles* pertains to *Brady* claims where the government suppresses material evidence favorable to the State, which is not the issue framed by Jackson's first claim. The state courts were under no obligation to apply the holding of *Kyles* to this issue, below, as there was no *Brady* component to this claim. Likewise, Jackson's parsing of dicta from *Harris v. New York*, 401 U.S. 222 (1971), fails to make *Harris* applicable to a proper § 2254(d)(1) analysis of this claim.

contain references to a drug deal gone bad, thus Jackson did not show that the "witnesses" would be material and favorable.  *Jackson*, 836 So.2d at 930-931.

Similarly, Jackson's reliance on *Taylor*, another compulsory process case, must fail as he seeks only to apply dicta from that opinion to his case.  Jackson's claim has little semblance to the issues presented in *Taylor*, where a defense witness was excluded for no reason other than an untimely defense disclosure during discovery.  Jackson's reliance on *Taylor* is faulty inasmuch as the Court upheld the trial court's exclusion of the proposed defense witness from trial based on violations of the discovery order.  Obviously, evidence can be excluded legally even where a defendant claims it is necessary for a defense.

The facts of Jackson's trial bear little semblance to those found in *Chambers*, where due process overcame state evidentiary rules when the defendant was denied an opportunity to question three witnesses to whom another had confessed in detail of committing the crime for which defendant stood trial.  Also, in *Chambers*, the third-party had made a written confession to police regarding the crime, which he subsequently repudiated.  There, the state's hearsay and "voucher" rules had to bend to conform to constitutional demands.  The Court, however, noted that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  *Chambers*, 410 U.S. at 295.  The Court further noted that in the

exercise of the right to call witnesses in his own behalf, the defendant is required to "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 301. The state court findings that the statements of Burdette, Barnes, Williams, and Rudolph did not discuss a drug deal gone bad and Jackson's failure to make an offer of proof bring this case squarely within the bounds of *Chambers*, inasmuch as Jackson failed to present evidence sufficient to establish that the proffered evidence even offered a potential defense or that the state court decision was not designed to "assure both fairness and reliability in the ascertainment of guilt and innocence."

Finally, *Davis v. Alaska*, 415 U.S. 308 (1974), offers no relief to Jackson as he was not denied the opportunity to cross-examine witnesses on matters that touched directly upon their partiality. Equally important, unlike the situation in *Davis* in the proceedings below the statements of the witnesses did not even support the claim that Jackson now makes (i.e., the murder was a drug deal gone bad).[2] And while Jackson now claims this evidence was "critical," he described Burdette as "less of a priority" when explaining why Burdette was not sought or interviewed prior to trial and he admitted that the co-defendants ascribed robbery as their motive for the crime. (Vol. 3, Tab # R-3, R. 24, 27-29) The idea that

---

[2] The State even went so far as to offer to stipulate to the admission of Gerald Burdette's statement at trial. (Vol. 3, Tab # R-3, R. 21)

"fake" crack might have been sold to Jackson, thus giving him motive to kill the victim, was purely the stuff of defense counsel's speculative mind.  (Vol. 3, Tab # R-3, R. 28)

Jackson is not entitled to relief under 28 U.S.C. § 2254(d).

**B.    PETITIONER JACKSON RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL. (Paragraphs 39-119)**

39-119.    The second ground for relief proffered by Petitioner Jackson is divided into those claims pertaining to trial counsel's representation of Jackson during the penalty phase and, separately, the guilt-innocence phase of trial. Respondent specifically answers these claims below.  Paragraphs 39-41 of the Petition, the general paragraphs utilized by Petitioner Jackson to introduce his overarching ineffective assistance of counsel ("IAC") claim are denied, except Respondents admit that Alabama law limited compensation for indigent defenders in capital cases to $1000.00 for out-of-court work for each potential phase of a capital murder prosecution, as alleged in Paragraph 40.

**1.    Trial Counsel Provided Constitutionally Effective Assistance During the Penalty/Sentencing Portions of Petitioner Jackson's Prosecution. (Paragraphs 43-111)[3]**

43-111.    Petitioner Jackson's claim that he received IAC during the penalty-sentencing phases of his trial is further sub-divided into three separate claims.    Respondent specifically answers those claims, individually, below.

---

[3] No paragraph 42 is contained in the Complaint.

Paragraphs 43-44 of the Petition, the paragraphs utilized by Petitioner Jackson to introduce his overarching penalty/sentencing IAC claim are denied, except Respondents admit the sentencing jury unanimously recommended a sentence of life imprisonment without parole and that the trial court rejected this recommendation and except for those matters established by the state court record.

In denying relief as to each of Jackson's IAC claims, the state court applied the proper "clearly established federal law" as determined by the Supreme Court. In general, the Alabama Court of Criminal Appeals expressly applied the following law in its resolution of Jackson's claims:

> To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> > "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac,* 456 U.S. 107, 133–34 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.' *See Michel v. Louisiana,* [350 U.S. 91], at 101 [76 S.Ct. 158, 100 L.Ed. 83 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

*Jackson*, CR-06-1026, 2009 WL 3805808, *18 (Ala. Crim. App. 2009) (Vol. 38, Tab # R-105).[4]

### a.    The Claim That Trial Counsel Failed to Investigate and Present Available Mitigating Evidence. (Paragraphs 45-100)

45-100.    This ground for relief is answered as follows:

A.    In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.    To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not

---

[4] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout. *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson v. Estelle*, 641 F.2d 250, 253 (5th Cir. 1981)).  This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of post-conviction relief.  *Jackson v. State*, CR-06-1026, 2009 WL 3805808 (Ala. Crim. App. 2009) (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 45 through 100 are denied, except for those matters established by the state court record.

In resolving this issue, the Court of Appeals wrote:

> Jackson next asserts that his counsel was ineffective for failing
> to investigate and present mitigation evidence at the penalty

17

phase and the judicial sentencing phase of his trial. Jackson pleaded that counsel was ineffective for failing to present evidence of his impoverished childhood, evidence that his father was absent from his life when he was a child, evidence that he had sold drugs to make money for his family, and evidence of his mental deficiency.

Jackson first contends that federal and state law recognize a defendant's right to present evidence at the judicial sentencing hearing and that the circuit court erred in relying on the case of *Boyd v. State,* 746 So.2d 364, 397 (Ala. Crim. App. 1999), to deny relief on this claim.

The circuit court made the following findings:

> "As this allegation relates to the judicial sentencing, the Court finds that it is without merit. In *Boyd v. State,* 746 So.2d 364, 397 (Ala. Crim. App. 1999), the Alabama Court of Criminal Appeals addressed the claim that '[Boyd's] trial counsel failed to present a strategy to save his life and that counsel otherwise failed to properly represent him at the sentencing hearing before the trial court.' The Alabama Court of Criminal Appeals rejected Boyd's argument because that court had previously found that Boyd's trial counsel's efforts at the penalty phase, which resulted in a 7–5 life without parole recommendation, were not ineffective. *Id.* at 398.  In addition, the *Boyd* Court went on to hold that:
>
>> "'Moreover, § 13A–5–47, Ala.Code 1975, governs the determination of sentence by the trial court. *Section 13A– 5–47, Ala.Code 1975, does not provide for the presentation of additional mitigation evidence at the sentencing by the trial court.* Therefore, trial counsel did not err in failing to do so.'"
>
> (Emphasis added.) Because Jackson had no right to present additional evidence to the trial court at the judicial sentencing, his trial counsels were not ineffective for failing to do so."

(R. 925–26.) Jackson contends that the above emphasized portion of the circuit court's order quoting *Boyd* conflicts with current Alabama law.

Recently, in *Woodward v. State,* [Ms. CR–08–0145, December 16, 2011] ——So.3d —— (Ala.Crim.App.2011), we criticized that portion of *Boyd* cited in the circuit court's order and stated:

> "Woodward argues that the statute limits the evidence that can be admitted at a sentence [hearing] before the judge to only that evidence addressing any part of the PSI [presentence report] that is the subject of a factual dispute. He further argues that § 13A–5–45(d), Ala.Code 1975, stating that probative, relevant evidence shall be received at the sentencing hearing applies only to the sentencing hearing before the jury. Woodward does not cite to any controlling precedent for this proposition. Our research reveals only authority that directly contradicts Woodward's argument.

> "First, the United States Supreme Court has held that a sentencing authority must consider all evidence offered as mitigating, that is, 'any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' *Lockett v. Ohio,* 438 U.S. 586 (1978) (footnote omitted). See also *Eddings v. Oklahoma,* 455 U.S. 104, 114 (1982) ('Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.'). In Alabama the trial judge is the sentencing authority, and the jury's advisory verdict is a recommendation that is not binding on the judge. § 13A–5–47(a), (e), Ala.Code 1975; *Ex parte Carroll,* 852 So.2d 821, 826–27 (Ala. 2001). If, as Woodward now argues, § 13A–5–47(d) excludes all relevant evidence except that evidence concerning a factual dispute in the PSI, a logical extension of that argument is that no additional mitigation proffered by a defendant could be admitted into evidence at a sentencing hearing before a trial judge unless that evidence, too, concerned a factual dispute in the PSI. Woodward's

interpretation of the statute could result in the exclusion of relevant proffered mitigation and create reversible error because it might deny a sentencer relevant information about a defendant's character or background, in violation of *Lockett* and its progeny.

"Second, Woodward's interpretation of the statute is inconsistent with the current practice in capital cases in Alabama. Both parties at the sentencing hearing before the trial judge in a capital case routinely present additional testimony not necessarily related to the PSI. E.g., *Ex parte Carroll,* 852 So.2d 833 (Ala. 2002); *McMillan v. State,* [Ms. CR–08–1954, Nov. 5, 2010] —— So.3d —— (Ala. Crim. App. 2010); *Mitchell v. State,* 84 So.3d 968 (Ala. Crim. App. 2010); *Washington v. State,* 106 So.3d 423 (Ala. Crim. App. 2007) (opinion on return to remand), rev'd on other grounds, 106 So.3d 441 (Ala.2011); *Scott v. State,* 937 So.2d 1065, 1071 (Ala. Crim. App. 2005). In *McGahee v. State,* 885 So.2d 191 (Ala. Crim. App. 2003), when reviewing a claim that counsel had rendered ineffective assistance when he failed to present additional testimony at the sentencing hearing before the trial judge, we stated: 'Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury's recommendation and to sentence McGahee to life imprisonment without parole.' 885 So.2d at 221 (footnote omitted). The United States Court of Appeals for the Eleventh Circuit has also recognized that additional evidence may be admitted at the hearing before the sentencing judge. See, e.g., *Brownlee v. Haley,* 306 F.3d 1043, 1050 (11th Cir. 2002) ('After the jury has returned its advisory verdict at the sentencing phase, the trial judge orders and receives a presentence investigation report, hears further arguments, and may receive additional evidence concerning the aggravating and mitigating factors.')."

Nonetheless, at the time of Jackson's 1998 trial, there was no established case law concerning the scope of what evidence a defendant could present at the judicial sentencing hearing held

pursuant to § 13A–5–47(c), Ala.Code 1975. *Boyd* was not released until one year after Jackson's trial, and the decision in *Woodward* was not released until 2011—more than 13 years after Jackson's capital-murder trial. "We will not hold [trial] counsel ineffective for failing to forecast changes in the law." *Nicks v. State,* 783 So.2d 895, 923 (Ala. Crim. App. 1999).

Jackson also asserts that the circuit court erred in finding, in the alternative, that Jackson was due no relief on his claim that counsel was ineffective for failing to present more mitigation evidence at the judicial sentencing hearing because the claim had no merit.

In *McGahee v. State,* 885 So.2d 191 (Ala. Crim. App. 2003), we stated the following concerning a petitioner's claim that counsel's performance at the judicial sentencing hearing was ineffective after the jury had recommended a sentence of life imprisonment without the possibility of parole.

"Postconviction claims that defense counsel should have conducted further investigation and presented additional evidence in mitigation are not uncommon in capital-murder cases. We have previously stated:

"'"There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the *Strickland* test."

"'*State v. Tarver,* 629 So.2d 14, 21 (Ala. Crim. App. 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).'

"*Williams v. State,* 783 So.2d 108, 118 (Ala. Crim. App. 2000).

"We have held, 'Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence.' *Id.* at 117.

"Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury's recommendation and to sentence McGahee to life imprisonment without parole. The same can be said after *any* sentencing hearing in a capital case in which a death sentence is imposed after the jury recommended a sentence of life imprisonment without parole."

885 So.2d at 221. More recently in *Hooks v. State,* 21 So.3d 772 (Ala. Crim. App. 2008), we stated:

"'Appellant's contention that his trial counsel rendered ineffective assistance of counsel during the penalty phase of the trial is repudiated by the fact that the jury recommended life in this case. *Lewis v. State,* 398 So.2d 432 (Fla. 1981); *Douglas v. State,* 373 So.2d 895 (Fla. 1979). Further, we refuse to find counsel ineffective by relying on the jury recommendation and failing to present further mitigating evidence to the judge. *Lewis.*'"

21 So.3d at 791, quoting *Buford v. State,* 492 So.2d 355, 359 (Fla. 1986).

Moreover, when examining claims of ineffective assistance of counsel related to the penalty phase of a capital-murder trial, the United States Supreme Court in *Wiggins v. Smith,* 539 U.S. 510 (2003), stated:

"In *Strickland* [*v. Washington,* 466 U.S. 668 (1984) ], we made clear that, to establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome.' *Id.,* at 694. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."

539 U.S. at 534, 123 S.Ct. 2527. This Court may reweigh the evidence de novo to determine if any prejudice occurred. *See Wiggins v. Smith.*

At the penalty phase of Jackson's trial, counsel presented the testimony of Jackson's girlfriend, Jackson's mother, Jackson's father, and Jackson's aunt. Sonya Ringstaff, Jackson's girlfriend, testified that at the time of the offense she and Jackson had been dating for about 18 months, that they had a daughter who was 2 months old at the time of his trial, and that the child had never seen her father. She said that she had never seen Jackson act violent toward anyone, that he was truthful, and that he was a "nice young man." Marilyn Jackson, Jackson's mother, testified that she had Jackson when she was 19 years of age, that at the time of the murder he lived with her, that Jackson completed the 9th grade and dropped out of school because he was not interested in school, that he was a respectful child who never gave her any trouble, that she had never seen him exhibit any violence toward anyone, and that Jackson had been committed to the custody of the Department of Youth Services on two occasions. She asked the jury to spare her son's life. Lewis Wendell Taylor, Jackson's father, testified that, after Jackson was born, he and Marilyn stayed together and tried to provide a decent home for Jackson, that he was not around a lot because, he said, he was always working, that Jackson was intelligent, that he got involved with the wrong group of people, and that Jackson was not a violent person. He concluded his direct examination by asking the jury to spare his son's life. On cross-examination, Taylor testified that he was incarcerated at the times that Jackson had been committed to the Department of Youth Services. Thelma Owens, Jackson's aunt, testified that she was Jackson's maternal aunt, that Jackson was a truthful person, and that Jackson was not a violent person. She asked the jury to spare Jackson's life and to let him think about what he had done for the rest of his life. Jackson's attorneys were so

effective that the jury unanimously recommended that Jackson be sentenced to life imprisonment without the possibility of parole.

In overriding the jury's recommendation and sentencing Jackson to death, the circuit court found two aggravating circumstances—that the murder was committed during the course of a robbery and that Jackson was under a sentence of imprisonment at the time of the murder. The court found as mitigation that Jackson was only 18 years of age at the time of the murder. The court specifically noted that it was assigning little weight to this mitigating circumstance. In regard to nonstatutory mitigating circumstances, the circuit court found that Jackson voluntarily surrendered to police, that Jackson did not evade his probation officer, that Jackson was truthful to his family members, and that he was not violent toward his girlfriend. The court gave these circumstances "slight weight." The sentencing court also stated that it considered Jackson's statement in the presentence report indicating that he was remorseful for what happened. Last, the sentencing court considered the jury's unanimous advisory verdict of life imprisonment without the possibility of parole, but it concluded that the aggravating circumstances outweighed the mitigating circumstances.

This Court has considered the mitigation evidence that Jackson contends should have been presented and has reweighed that evidence against the evidence that was presented at trial. We conclude that the aggravating circumstances still outweigh the mitigating circumstances and warrant the imposition of the death sentence. Thus, counsel's failure to present evidence of Jackson's impoverished childhood, the lack of a father figure, the fact that he sold drugs to help his family, and his mental health had no impact on the sentence in this case. Accordingly, the circuit court did not abuse its discretion in denying relief on this claim.

*Jackson,* 2009 WL 3805808, at *21-25 (footnotes omitted) (Vol. 38, Tab # R-105).[5]  This lengthy evaluation of the issue clearly establishes that the state court correctly identified *Strickland* and *Wiggins* as the clearly established federal law as determined by the Supreme Court and applied it in a reasonable manner.

In *Routly v. Singletary*, 33 F.3d 1279, 1297 (11th Cir. 1994), the court took note of the fact that IAC prejudice can be based on the impact of identified errors or omissions as to either the sentencing jury or the sentencing judge.  As in this case, the issue in *Routly* involved trial counsel's alleged failure to introduce additional evidence in mitigation.   In recognition of the two potential sources of prejudice, the court first resolved the question of whether the alleged omissions in that case prejudiced Roulty with his sentencing jury.  The Court wrote, "In the first instance, ***Routly cannot show that any failure to present mitigating evidence to the jury prejudiced him to any degree whatsoever*** in the jury's consideration of penalty because the jury recommended a sentence of life imprisonment anyway."  *Id*.  (emphasis added).  As this is the identical analysis performed by the State

---

[5] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253).  This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or... *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

courts, the Eleventh Circuit's view on this matter brings the state court squarely within the confines of being a 'reasonable application' of clearly established federal law.

Recognizing that prejudice could also be based on the effect of the omitted evidence on the sentencing judge, the court in *Routly* went on to conduct a further prejudice analysis. The court found no prejudice in regard to the sentencing judge because the "essence" of the omitted evidence was presented to the judge in the presentence investigation report. *Routly*, 33 F.3d at 1297. Further, and more important for purposes of this appeal, the Court noted that the sentencing judge reviewed the "omitted" evidence during post-conviction proceedings and held that the additional mitigating evidence would not have altered the result. *Id.* Again, this is the same analysis performed by the state courts, below. As this is precisely the type of analysis required by the Court in *Wiggins*, the state court decision is due deference under the AEDPA.

Based on the forgoing, Jackson cannot prevail under 28 U.S.C. § 2254(d).

> **b.** **The Claim That Trial Counsel Failed to Develop and Present a Penalty and Sentencing Phase Strategy to Convince the Sentencing Authority That Life Without Parole Was the Appropriate Sentence. (Paragraphs 101-104)**

101-104. This claim for relief in Jackson's Petition is answered as follows:

26

A.     In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of post-conviction relief.  *Jackson v. State*, 2009 WL 3805808 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court

resolution was based on a reasonable determination of the facts. Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

D. Without waiving the forgoing, the factual averments of Petitioner in paragraphs 101 through 104 are denied, except for those matters established by the state court record.

The State's answer to the previous claim (Claim B(I)(a)) sets forth the findings of the Alabama Court of Criminal Appeals in denying this claim. *See*, *Jackson,* 2009 WL 3805808, at *21-25 (Vol. 38, Tab # R-105). For the same reasons set forth by the State in its answer to the previous claim, Jackson cannot prevail under the AEDPA as to the present claim. *See*, *Routly*, 33 F.3d at 1297.

### c. The Claim Trial Counsel Failed to Obtain and Present Independent Expert Witnesses. (Paragraphs 105-111)

105-111. The claim for relief is answered as follows:

A. In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact. In this proceeding, those findings of fact are presumed correct.

B. To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral

review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of post-conviction relief. *Jackson v. State*, 2009 WL 3805808 (Vol. 38, Tab # R-105).   The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 105 through 111 are denied, except for those matters established by the state court record.

In affirming the state trial court's denial of this claim the Court of Criminal Appeals wrote:

> Jackson failed to identify, by name, any experts who could have testified, nor did he identify the content of any expert's expected testimony. As we stated in *Daniel v. State,* 86 So.3d 405 (Ala. Crim. App. 2011):

> "Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel's trial or the content of the expert's expected testimony. Accordingly, Daniel failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R. Crim. P. See *McNabb v. State,* 991 So.2d 313 (Ala. Crim. App.2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently pleaded because expert was not identified); *Woods v. State,* 957 So.2d 492 (Ala. Crim. App. 2004), *rev'd on other grounds*, 957 So.2d 533 (Ala. 2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name)."

> 86 So.3d at 425–26. Jackson failed to satisfy the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P.; therefore, this claim was correctly dismissed.

*Jackson*, 2009 WL 3805808, at \*27 (Vol. 38, Tab # R-105).[6]  Later, in disposing of

a "catchall" penalty-phase IAC claim, the court further observed:

> An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor's obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32."

—— So.3d at ——. Jackson failed to comply with the pleading

---

[6] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253).  This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

> requirements of Rule 32.7(d), Ala. R. Crim. P.; thus, this claim
> was correctly dismissed.

*Jackson*, 2009 WL 3805808, at \*31 (Vol. 38, Tab # R-105).

The Eleventh Circuit treats Alabama's procedural rules pertaining to the heightened pleading requirements for post-conviction relief as merits adjudications. *Boyd v. Commissioner, Ala. Dept. of Corrs.,* 697 F.3d 1320, 1331 (11th Cir. 2012). Because the state court correctly noted that Jackson failed to allege specific facts or evidence that would have been offered from the anonymous 'experts' referenced in his petition, Jackson's petition could not establish penalty-phase prejudice under either the *Strickland v. Washington*, 466 U.S. 668 (1984) standard or the *Wiggins* analysis. Accordingly, the state court determination must be affirmed pursuant to the AEDPA.

### 2. Trial Counsel Provided Constitutionally Effective Assistance During the Guilt-Phase of Jackson's Trial. (Paragraphs 112-119)

112-119. This claim for relief is answered as follows:

A. In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact. In this proceeding, those findings of fact are presumed correct.

B. To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is

not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.   The claims in Paragraph 113 (trial counsel's failure to interview Gerard Burdette), Paragraphs 114-116 (trial counsel's failure to adequately investigate the State's capital murder charges against Petitioner), and Paragraph 117 (trial counsel's failure to raise and argue *Batson* and *J.E.B.*) were not exhausted in state court and were denied on an adequate and independent state law grounds.   On appeal, the Alabama Court of Criminal Appeals denied those aspects of Jackson's guilt-phase IAC claim on the following basis:

> Jackson asserts that the circuit court erred in dismissing 12 of his claims of ineffective assistance of counsel on the basis that they lacked specificity.
>
> In this section of Jackson's brief, Jackson merely recites a laundry list of 12 claims that, he says, the circuit court improperly dismissed.[12] Jackson makes no argument in support of any of the cited claims. This section of Jackson's brief totally fails to comply with the briefing requirements of *Rule 28, Ala. R.App.P.* Rule 28(a)(10), *Ala.R.App.P.*, states that the argument

section of an appellate brief shall contain the following:

"An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relief on."

FN12. We have referred to this practice as "sandbagging." "The practice of providing a 'laundry list' or arguments without citation to legal authority smacks of sandbagging, a practice that this Court and the United States Supreme Court have condemned." *Flowers v. State,* 799 So.2d 966, 992 (Ala. Crim. App. 1999).

We note that the plain-error standard of review does not apply to this Court's review of a postconviction petition where the defendant was sentenced to death. *See Ferguson v. State,* 13 So.3d 418 (Ala. Crim. App. 2008). "[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority." *Zasadil v. City of Montgomery,* 594 So.2d 231, 231 (Ala. Crim. App. 1991). "Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented." *C.B.D. v. State,* 90 So.3d 227, 239 (Ala. Crim. App. 2011).

"We are aware that application of Rule 28(a)(10) to find a waiver of arguments in an appellate brief has been limited to those cases in which the appellant presents general assertions and propositions of law with few or no citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions unsupported by sufficient legal authority or argument. Although Rule 28(a)(10) is to be cautiously applied, it has been applied recently by the Alabama Supreme Court and by this Court when appropriate. E.g., *Ex parte Theodorou,* 53 So.3d 151 (Ala. 2010); *Jefferson County Comm'n v. Edwards,* 32 So.3d 572 (Ala. 2009); *Slack v. Stream,* 988 So.2d 516 (Ala. 2008); *James v. State,* 61 So.3d 357 (Ala. Crim. App. 2010) (opinion on remand from Alabama Supreme Court); *Scott v. State,* [Ms. CR–06–2233, March 26, 2010] —— So.3d —— (Ala. Crim.

> App. 2010); *Baker v. State,* 87 So.3d 587 (Ala. Crim. App.
> 2009); *Lee v. State,* 44 So.3d 1145 (Ala. Crim. App. 2009);
> *Bush v. State,* 92 So.3d 121 (Ala. Crim. App. 2009); and
> *Franklin v. State,* 23 So.3d 694 (Ala. Crim. App. 2008)."
>
> *Taylor v. State,* —— So.3d at ——.
>
> Accordingly, Jackson has waived review of the claims merely
> listed in this section of his brief on appeal.

*Jackson*, 2009 WL 3805808, at *32-33 (Vol. 38, Tab # R-105).  Proper exhaustion

of these claims required Jackson to avail himself of one full round of state court

appeals.  *O'Sullivan v. Boerckal*, 526 U.S. 838, 845 (1999) ("…we conclude that

state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process.").  Jackson failed to do so, as his inability to comply with

state procedural rules—Rule 28(a)(10) of the *Alabama Rules of Appellate*

*Procedure*—prevented the Alabama Court of Criminal Appeals from being able to

address these claims of IAC on the merits.  Because Rule 28(a)(10) was an

adequate and independent state law grounds for denying relief on the underlying

IAC claims, Jackson is not entitled to relief in this Court, nor can he "revive" his

claim in this forum after failing to give the Court of Criminal Appeals a fair

opportunity to adjudicate the claim on the basis of more than "sandbagging."

        D.      Portions of this claim were addressed on the merits and rejected

by the Alabama Court of Criminal Appeals during Jackson's appeal from the

denial of post-conviction relief.  *Jackson v. State*, 2009 WL 3805808 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

> E.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 112 through 119 are denied, except for those matters established by the state court record.

In affirming the state trial court's denial of relief on the claim that counsel were ineffective for not requesting and obtaining a lesser-included instruction on the offense of robbery, the Court of Criminal Appeals wrote:

> Jackson further argues that counsel was ineffective for failing to request a jury instruction on the lesser-included offense of robbery. In denying relief on this claim, the circuit court stated:
>
> > "On direct appeal, Jackson argued that 'the trial court should have instructed the jury on the lesser included offense of robbery.' *Jackson v. State,* 836 So.2d 915, 938 (Ala. Crim. App. 1999). In rejecting Jackson's argument, the Alabama Court of Criminal Appeals held that '[t]here was simply no rational basis under the evidence presented on which the jury could find [Jackson] guilty of robbery and not guilty of murder.' *Id.* at 939. Jackson proffers no facts in his second amended Rule 32 petition that, if presented by his trial counsel to the trial court, would have entitled him to a jury instruction on the lesser-included offense of robbery. *See Yarbrough v. State,* 841 So.2d 306, 309 (Ala. Crim. App. 2002) (holding that '[c]ounsel is not ineffective for failing to file a motion for which there is no legal basis')."

(R. 917–18.)

> On direct appeal, this Court specifically addressed the substantive issue underlying the claim of ineffective assistance of counsel and held that there was no reasonable basis for a jury instruction on the lesser-included offense of robbery. Thus, Jackson cannot show that his counsel was ineffective for failing to raise an issue that has no merit. *See Lee[ v. State*, 44 So.3d 1145, 1173-74 (Ala. Crim. App. 2009)]*, supra.*

*Jackson*, 2009 WL 3805808, at *35 (Vol. 38, Tab # R-105). Having found that counsel could not have obtained a lesser-included offense instruction on robbery—even if one had been requested—the state court reasonably denied relief on the basis that Jackson could not establish prejudice as required by *Strickland*. Accordingly, Jackson is not entitled to relief as to this claim. 28 U.S.C. § 2254(d).

## C. ALABAMA'S SENTENCING PROCEDURES ARE CONSTITUTIONAL AND JACKSON'S SENTENCE COMPLIED WITH CONSTITUTIONAL REQUIREMENTS. (PARAGRAPHS 120-144)

120-144. This claim for relief in Jackson's petition is further divided into three-subparts, each of which is answered, individually, below. Respondents admit the factual averments made in support of Paragraph 120. Respondents deny, however, that *habeas corpus* relief is warranted.

### 1. The Claim That the Trial Court's Sentencing Order Violates Clearly Established Federal Law. (Paragraphs 121-128)

121-128. The first sub-claim for relief within the third claim for relief in

Jackson's petition is further divided into three parts, each of which is answered, individually, below. The allegations contained in Paragraph 121 of the Petition are denied.

**a. The Allegation the Trial Court Improperly Copied a Sentencing Order Written By a Different Judge, From a Different Case And From a Different State. (Paragraphs 122-123)**

122-123. This claim for relief is answered as follows:

A. In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact. In this proceeding, those findings of fact are presumed correct.

B. To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Supreme Court and the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Ex parte Jackson*, 836 So.2d 979, 988 (Ala. 2001) (Vol. 37, Tab # R-94);  *Jackson v. State*, 836 So.2d 915, 937 (Ala. Crim. App. 1999) (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 122 through 123 are denied, except for those matters established by the state court record.

In denying this claim the Court of Criminal Appeals wrote:

> …the appellant argues that the trial court improperly plagiarized a sentencing order written by a different judge, in another case, in another state.  Specifically, he challenges the trial court's entire analysis of the age mitigating circumstance, and again contends that the trial court deprived him of an individualized sentencing determination.
>
> In its sentencing order, the trial judge specifically stated, "When considering the weight to be given to Jackson's age as a mitigating factor, this case is quite similar to *Shellito v. State*, 701 So.2d 837 (Fla. 1997)."  (C.R. 177)  The court then analyzed the mitigating circumstance in a form similar to that used by the court in *Shellito*.  Although it adapted the Florida court's reasoning, the trial court clearly incorporated the facts and evidence presented in this case in performing its analysis.  Thus, the trial court made an individualized sentencing

38

determination, and the appellant's argument is without merit.

*Jackson*, 836 So.2d at 937 (Vol. 37, Tab # R-90).   The Alabama Supreme Court

denied this claim, finding:

> The record shows that in the sentencing order, the trial court stated that Jackson's case was similar to *Shellito.* Upon review of *Shellito* and of the trial court's sentencing order, we conclude that the trial court adopted only the analysis used in *Shellito.* In this case, the trial court's assessment contains a thorough analysis of the facts and the circumstances involved in this case, thereby providing an individualized sentencing determination. We find no error.

*Jackson*, 836 So.2d at 988. [7] (Vol. 37, Tab # R-94)

The sole Supreme Court decision relied upon by Jackson, *Zant v. Stephens*,

462 U.S. 862 (1983), dealt with the legal import of an invalidated aggravating

circumstance on a jury's sentencing recommendation and did not address a state

trial court's consideration of another court's sentencing philosophy in the writing

of a sentencing order.   Further, the state court finding that "the trial court made an

individualized sentencing determination" undercuts Jackson's attempted reliance

on dicta in *Zant*. *See Carey,* 549 U.S. at 74 ("Clearly established" for § 2254(d)(1)

purposes refers to the holdings of the Supreme Court, not dicta in its decisions).

---

[7] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout. *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions. *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted). Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court. *Harrington*, 131 S.Ct. at 786 (emphasis added). Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

**b.    The Allegation the Trial Court Improperly Considered Jackson's Physical Characteristics.  (Paragraphs 124-125)**

124-125.  This claim for relief is answered as follows:

A.    In resolving the issue presented, the trial court, the Alabama Court of Criminal Appeals and the Alabama Supreme Court made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.    To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Supreme Court and the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Jackson*, 836 So.2d at 988 (Vol. 37, Tab # R-94); *Jackson*, 836 So.2d at 936-937 (Vol. 37, Tab # R-90).  The state court resolution of

this issue was neither contrary to, nor an unreasonable application of clearly established federal law.   Further, the State court resolution was based on a reasonable determination of the facts.   Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

        D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 124 through 125 are denied, except for those matters established by the state court record.

In rejecting this claim, the Alabama Court of Criminal Appeals noted:

> …the appellant argues that the trial court improperly considered his physical characteristics in considering the statutory mitigating circumstance of his age at the time of the offense. He contends that his height and weight are arbitrary variables that are not relevant to his moral or criminal responsibility, and that the trial court's consideration of those attributes deprived him of an individualized and reliable sentencing determination.

> "[T]he decision as to whether a particular mitigating circumstance is sufficiently proven by the evidence and the weight to be accorded to it rests with the trial court. See *Haney v. State,* 603 So.2d 368 (Ala.Cr.App.1991), affirmed, 603 So.2d 412 (Ala.1992).

> "'''Although consideration of all mitigating circumstances is required by the United States Constitution, *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rests with the judge and jury. *Lucas v. State,* 376 So.2d 1149 (Fla.1979).' *Smith v. State,* 407 So.2d 894, 901 (Fla.1981)." '

> "*Harrell v. State,* 470 So.2d 1303, 1308 (Ala.Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935,

41

106 S.Ct. 269, 88 L.Ed.2d 276 (1985). See also *McWilliams v. State,* [640] So.2d [982] (Ala.Cr.App.1991)."

*Giles v. State,* 632 So.2d 568, 572 (Ala.Cr.App.1992), aff'd, 632 So.2d 577 (Ala.1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994).

We have carefully reviewed the trial court's sentencing order, and we find the appellant's argument to be without merit. In assessing the weight it would assign to the age mitigating circumstance, the trial court considered the appellant's height, weight, age, physical maturity, and juvenile record; the fact that the appellant was the father of a three-month-old child; the fact that the appellant had used marijuana daily since the age of 14; and the fact that the appellant consumed alcohol on a regular basis. The trial court included the appellant's height and weight in the portion of its analysis that concluded that the appellant was a physically mature adult at the time of the offense. However, those physical attributes were only two of several factors the trial court considered in deciding what weight to assign to the appellant's age as a mitigating circumstance. *Giles,* supra. Accordingly, the trial court did not err in this regard.

*Jackson*, 836 So.2d at 936-937 (footnote omitted) (Vol. 37, Tab # R-90).   The

Alabama Supreme Court, reviewing this claim, found:

The record reflects that in weighing the mitigating circumstance of Jackson's age at the time of the offense, the trial court noted Jackson's height, his weight, and his age at the time of the offense, as well as the fact that Jackson was the father of a 3–month–old child, that he had smoked marijuana since he was 14 years old, that he consumed alcohol on a regular basis, and that he had an extensive criminal record. The court also noted that Jackson was "a physically mature adult" at the time of the offense. A trial judge can consider past behavior and prior criminal activity in evaluating a defendant's maturity and in determining the weight to be given the mitigating circumstance of the defendant's age. Cf. *Ex parte Burgess,* supra. The decision whether a particular mitigating circumstance is proven

and the weight to be given it rests with the judge and the jury. See *Carroll v. State,* 599 So.2d 1253 (Ala. Crim. App. 1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). The trial court did not err in its assessment of the weight to assign the mitigating circumstance of Jackson's age at the time of the offense.

*Jackson*, 836 So.2d at 988. [8]  (Vol. 37, Tab # R-94)

The sole Supreme Court case relied upon by Jackson in support of this claim for relief is *Woodson v. North Carolina*, 428 U.S. 280 (1976).  Jackson, as he has previously in his Petition, attempts to rely on dicta from the Supreme Court rather than "clearly established" federal law.  *But see*, *Carey,* 549 U.S. at 74 ("Clearly established" for § 2254(d)(1) purposes refers to the holdings of the Supreme Court, not dicta in its decisions).   The *Woodson* opinion addressed mandatory, or automatic, death sentences applied to certain crimes.  Jackson does not allege that such happened in the present case.  To the extent *Woodson* requires individualized sentencing, the state court opinions made clear that the trial court considered "several factors" in determining the weight to be given to the mitigating circumstance of Jackson's age at the time of the crime.   Under 28 U.S.C. § 2254(d), then, Jackson's claim is due to be denied.

---

[8] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253).  This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

c.     **The Allegation the Trial Court Failed to Make an Adequate Determination of Jackson's Culpability. (Paragraphs 126-128)**

126-128.  This claim for relief is answered as follows:

A.     In resolving the issue presented, the trial court, the Alabama Supreme Court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Supreme Court and the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Jackson,* 836 So.2d at 988 (Vol. 37, Tab # R-94);

*Jackson*, 836 So.2d at 938 (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

D.   Without waiving the forgoing, the factual averments of Petitioner in paragraphs 126 through 128 are denied, except for those matters established by the state court record.

In rejecting this claim, the Court of Criminal Appeals found that "this contention is meritless." *Jackson*, 836 So.2d at 938 (Vol. 37, Tab # R-90).  The court further referenced the trial court's findings, supported by the evidence, that "that the appellant shot the victim" and "that the appellant was the ringleader in the offense." *Id.*  The Alabama Supreme Court agreed, writing:

> Jackson contends that the trial court failed to make an adequate determination of his culpability by failing to determine whether he was the actual shooter in the murder.
>
> In its sentencing order, the trial court stated "there is evidence that [Jackson] was the shooter [and] there is evidence that suggests that [one of Jackson's codefendants], not [Jackson] fired the shot that killed [the victim]." The record supports the court's determination of Jackson's culpability. Therefore, Jackson's argument that the trial court failed to determine his culpability is without merit.

45

*Jackson*, 836 So.2d at 988.[9] (Vol. 37, Tab # R-94)   Pursuant to 28 U.S.C. §

2254(d), this claim is due to be denied.

> **2.    The Claim That the Trial Court's Sentencing Order Conflicts with *Ring v. Arizona*, 536 U.S. 584 (2002). (Paragraphs 129-137)**

129-137.  This claim for relief in Jackson's Petition is answered as follows:

   A.    Jackson failed to present this claim to any state court for review

prior to presenting this claim in this petition for writ of *habeas corpus*.  Thus, this

claim is unexhausted and it is not properly before this Court for review.  *Teague v.*

*Lane*, 489 U.S. 288, 297-98 (1989); *Engle v. Issac*, 456 U.S. 107, 113-14, 117,

124-25 (1982); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).  Dismissal

to allow Jackson to exhaust this claim would be futile as he is now barred from

raising this issue as a federal constitutional question in state court.  First, a Rule 32

petition at this point would be barred by the statute of limitations.  *Ala.R.Crim.P.*,

Rule 32.2(c).  Second, another Rule 32 petition by Jackson would be barred by

Alabama's ban on successive petitions.  *Ala.R.Crim.P.*, Rule 32.2(b).

Consequently, this claim is procedurally defaulted from this Court's review.  *See*

*Collier v. Jones*, 910 F.2d 770, 772 (11th Cir. 1990) ("When a petitioner has failed

---

[9] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253).  This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

to present a claim to the state court and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court."); *Baldwin v. Johnson*, 152 F.3d 1304, 1318 (11th Cir. 1998).

B.     This claim is due to be denied as Jackson cannot prevail as a matter of law. *Schriro v. Summerlin*, 542 U.S. 348 (2004) (*Ring* is not retroactive to death-penalty cases which where final on direct appeal prior to its release).

C.     Without waiving the forgoing, the averments made in support of this claim are denied, except for those matters established by the state court record.

### 3.     The Trial Court Possessed Constitutional Authority to Sentence Jackson to Death.  (Paragraphs 138-144)

138-144.     This claim for relief in the Petition is answered as follows:

A.     In resolving the issue presented, the Alabama Supreme Court made specific findings of fact.   In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral

47

review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Supreme Court during Jackson's direct appeal. *Jackson,* 836 So.2d at 988 (Vol. 37, Tab # R-94).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law. Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

D.    Clearly established federal law as determined by the Supreme Court has previously found Alabama's judge-centric sentencing scheme to be constitutional.  *See*, *Harris v. Alabama*, 513 U.S. 504 (1995).  Thus, Jackson cannot prevail on this claim under the AEDPA as a matter of law.  28 U.S.C. § 2254(d).

E.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 138 through 144 are denied, except for those matters established by the state court record.

48

In denying this claim the Alabama Supreme Court wrote:

> [Jackson] argues that § 13A–5–47(e), Ala.Code 1975—Alabama's judicial override statute—is standardless, unlike override statutes in other states, and that it fails to give lower courts guidance in rejecting a jury's recommendation.
>
> This Court in *Ex parte Apicella*, 809 So.2d 865 (Ala. 2001), upheld the constitutionality of having a judge, not the jury, determine the punishment in a capital case. In *Ex parte Taylor*, 808 So.2d 1215 (Ala. 2001), this Court held that the capital-sentencing procedure set forth in §§ 13A–5–47 and 13A–5–53, Ala.Code 1975, provided sufficient guidance to prevent the arbitrary and capricious imposition of a death sentence. Specifically, the Court noted that the capital-sentencing procedure "ensures that the trial judge is given adequate information and sufficient guidance in deciding whether to accept or to reject a jury's recommended sentence" and that § 13A–5–53, Ala.Code 1975, provided sufficient guidelines for an appellate determination of "whether a trial judge's override of the jury's recommendation is appropriate in a particular case." 808 So.2d at 1219.
>
> We now turn to an analysis of the propriety of the override of the jury's recommendation of life imprisonment without parole in Jackson's case.
>
> Section 13A–5–53, Ala.Code 1975, provides, in pertinent part:
>
>> "(b) In determining whether death was the proper sentence in the case the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall determine:
>>
>> "(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
>> "(2) Whether an independent weighing of the aggravating

and mitigating circumstances at the appellate level indicates that death was the proper sentence; and

"(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

"(c) The Court of Criminal Appeals shall explicitly address each of the three questions specified in subsection (b) of this section in every case it reviews in which a sentence of death has been imposed.

"(d) After performing the review specified in this section, the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall be authorized to:

"(1) Affirm the sentence of death;

"....

"(3) In cases in which the death penalty is deemed inappropriate under subdivision (b)(2) or (b)(3) of this section, set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole."

Thus, reinstatement of a jury recommendation of life imprisonment without parole is appropriate in those circumstances where the trial court has overridden the jury's recommendation based on bias, passion, or prejudice; where the weighing of aggravating or mitigating circumstances is defective; or where the sentence is disproportionately severe under all of the circumstances. See § 13A–5–53(b), Ala.Code 1975.

In this case, before determining the sentence, the trial court considered all the available evidence; heard arguments on aggravating circumstances and mitigating circumstances; entered written findings of fact summarizing the offense and Jackson's participation in it; made specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A–5–49, each mitigating

50

circumstance enumerated in § 13A–5–51, and any additional mitigating circumstance offered pursuant to § 13A–5–52; weighed the advisory verdict of the jury; considered and weighed the presentence-investigation report; considered and independently weighed the mitigating circumstances and the aggravating circumstances; and stated specific reasons for giving the jury's recommendation the consideration it gave the recommendation, see *Ex parte Taylor*. After following this procedure, the trial court concluded that the aggravating circumstances outweighed the mitigating circumstance and imposed the death penalty, overriding the jury's recommendation.

We commend the trial court for its thorough sentencing order and especially for its explanation for its override of the jury recommendation. The trial court found two statutory aggravating circumstances: (1) that the capital offense was committed while Jackson was engaged in a robbery or an attempted robbery, and (2) that the capital offense was committed by a person under sentence of imprisonment. The trial court found one statutory mitigating circumstance: that Jackson was 18 years old at the time of the offense. It is evident from the trial court's sentencing order that it independently weighed the aggravating circumstances and the mitigating circumstance. Additionally, the trial court provided a detailed analysis of its consideration of the jury's recommendation of a sentence of life imprisonment without the possibility of parole and the reasons it rejected that recommendation and sentenced Jackson to death. There is no evidence in the record before us indicating that bias, passion, or prejudice were factors in the trial court's imposing the death sentence.

We have independently weighed the aggravating and mitigating circumstances to determine if death is the appropriate sentence; we conclude, as did the Court of Criminal Appeals, that the aggravating circumstances in this case outweighed the

51

mitigating circumstance. Furthermore, we agree with the Court of Criminal Appeals that in this case the punishment of death is not excessive or disproportionate to the penalty imposed in similar cases. Therefore, we hold that the imposition of the death sentence in this case was proper.

*Jackson*, 836 So.2d 989-991[10] (footnotes omitted) (Vol. 37, Tab # R-94).

Under the deference required by the AEDPA, this Court must deny this claim in Jackson's petition.

## D.   THE TRIAL COURT WAS NOT REQUIRED TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF ROBBERY IN THE FIRST DEGREE. (PARAGRAPHS 145-149)

145-149.   This claim for relief in Jackson's petition is answered as follows:

A.   In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.   To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not

---

[10] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's direct appeal. *Jackson*, 836 So.2d at 938-939 (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.   Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 145 through 149 are denied, except for those matters established by the state court record.

In rejecting this claim, the Alabama Court of Criminal Appeals noted:

> [Jackson] did not request an instruction on robbery, and he did not object when the trial court did not give one. Therefore, we review this contention for plain error. Rule 45A, *Ala.R.App.P.*

Section 13A–1–9(b), Ala.Code 1975, provides: "The court shall not charge the jury with respect to an included offense *unless there is a rational basis for a verdict convicting the defendant of the included offense.*" (Emphasis added.) In *Boyd v. State,* 699 So.2d 967 (Ala.Cr.App.1997), we held:

> "'A defendant accused of a greater offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the state or the defendant offers the evidence. *Ex parte Pruitt,* 457 So.2d 456 (Ala.1984); *Parker v. State,* 581 So.2d 1211 (Ala.Cr.App.1990), cert. denied, 581 So.2d 1216 (Ala.1991). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense ... *Anderson v. State,* 507 So.2d 580 (Ala.Cr.App.1987).... Section 13A–1–9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." '
>
> "*Breckenridge v. State,* 628 So.2d 1012, 1016 (Ala. Cr. App. 1993)."

699 So.2d at 972.

The evidence presented at trial showed that the robbery occurred after the murder. The appellant contends that the trial court should have instructed the jury on the lesser included offense of robbery because the robbery allegedly was a mere afterthought to the murder and it was not committed during the robbery. In fact, he contended at trial that he did not have anything to do with the robbery and that Barnes and Williams stole the car only because he drove away from the crime scene without them. He now contends that, if the jury had believed his theory, it could have found him guilty of the separate offenses of intentional murder and robbery. We disagree.

The trial court instructed the jury on the lesser included offense of intentional murder, thus giving the jury the option of finding that the appellant committed the murder but not the robbery. However, under the evidence presented, the appellant did not actually rob the victim, although there was sufficient evidence to show that that was his intent in initiating the confrontation. Under the appellant's theory that the robbery was a mere afterthought and that it did not occur during the murder, the jury could have found the appellant guilty of murder, but he would not have been guilty of the robbery. Thus, if the jury had believed the appellant's theory and determined that the robbery did not occur during the murder, there would not have been a rational basis for it to find that the appellant was guilty of robbery.

The appellant also contends that the jury could have believed that the robbery did not occur during the murder but still could have found him guilty of being an accomplice to the robbery. This contention is not supported by the record. As stated above, the evidence clearly showed that the appellant's intent when he started following the victim was to rob the victim. If the jury determined that the appellant was guilty of the robbery, even if it determined that he did not kill the victim, then it could only have convicted him of capital murder. Under the evidence presented, he was at least an accomplice to the murder and, more likely, the actual murderer. There was simply no rational basis under the evidence presented on which the jury could find the appellant guilty of robbery and not guilty of murder. Therefore, we do not find any plain error in this regard.

*Jackson*, 836 So.2d at 938-939[11] (Vol. 37, Tab # R-90).   Jackson's reliance on

*Beck v. Alabama*, 447 U.S. 625 (1980) is misplaced, as *Beck* requires any lesser-

---

[11] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

included instruction to be supported by the evidence. The state court correctly noted that no reasonable view of the evidence would have supported a robbery conviction in this case. Further, as Jackson did not request such an instruction and did not object to the absence of such an instruction, *Beck* does not apply to the fact situation presented in this case.

## E.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING A CONTINUANCE REQUESTED BY JACKSON. (PARAGRAPHS 150-157)

150-157. This claim for relief in Jackson's petition is answered as follows:

A.    In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact. In this proceeding, those findings of fact are presumed correct.

B.    To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court. Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient

---

holding in a prior decision of the United States Supreme Court. *Harrington*, 131 S.Ct. at 786 (emphasis added). Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

        C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's direct appeal. *Jackson*, 836 So.2d at 939-941 (Vol. 37, Tab # R-90). The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law. Further, the State court resolution was based on a reasonable determination of the facts. Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

        D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 150 through 157 are denied, except for those matters established by the state court record.

    In rejecting this claim, the Alabama Court of Criminal Appeals noted:

> Before the trial began, the appellant requested a continuance to locate Gerard Burdette, who had been riding in the victim's vehicle at the time of the murder. Shortly after the murder, Burdette had made a statement about the crime to the police. Based on that statement, the appellant contended that Burdette's testimony could exonerate him.[4] The prosecution conceded that Burdette's testimony was material, but it agreed to stipulate that Burdette's written statement could be admitted into evidence. The trial court denied the appellant's request for a continuance, and Burdette's statement was read and admitted into evidence during the appellant's case-in-chief.

FN4.  The appellant also argues that Burdette's statement supported his theory that the motive for the killing was retaliation for a bad drug deal and that the killing did not occur during a robbery. However, we have reviewed Burdette's statement, and it does not refer to a bad drug deal. Therefore, this contention is refuted by the record and is without merit.

"A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence."

*Ex parte Saranthus,* 501 So.2d 1256, 1257 (Ala. 1986) (citations omitted). At the hearing on the motion, both the prosecutor and defense counsel stated that they had attempted to locate Burdette and that their efforts had not been successful. They also noted that both state and federal authorities had outstanding warrants for Burdette's arrest, that Burdette's mother stated that she did not know where he was, and that there had been some indication that Burdette was no longer in the Montgomery area. In its written order denying the appellant's motion, the trial court stated:

"In an attempt to accommodate all parties to secure the appearance of Burdette, on February 20, 1998, investigators of the District Attorney's office and a Deputy District Attorney went to the home of Burdette's mother to inquire of his whereabouts. According to the report received from these investigators and the Deputy District Attorney, the mother informed them that she had not seen her son in a year and it was reported that he was not in Montgomery. Because there does not appear to be any reasonable likelihood that Burdette's appearance could be secured in the reasonable

foreseeable future, the motion for continuance is denied.

"The Court notes that the State stipulates that the statement of Burdette which was taken by Corporal Cunningham can be used as evidence in the Defendant's behalf."

(C.R. 100.) At the close of the State's case-in-chief, when the appellant moved for a judgment of acquittal on the ground that Burdette was not available as a witness, the trial court reiterated:

"As for Mr. Burdette, I have issued an order from competent counsel on why I did not postpone the trial of this case because Mr. Burdette could not be found. But just for the record again, based on everything that has been reported to the Court, Mr. Burdette has charges pending against him, Class A felony charges, I believe, for robbery in the first degree and he has apparently flown the jurisdiction of this Court. And there is no way anybody could tell when Mr. Burdette would ever be [available.] So that is the basis of that. Not anything that counsel did or didn't do. But he is just gone, and nobody knows when he is going to be apprehended and brought back."

(R. 30–31.)  "While we assume for present purposes that the first and third parts of the *Saranthus* test were met here, we conclude that the trial court did not abuse its discretion in denying the continuance based upon Reese's failure to satisfy the second *Saranthus* requirement. There was absolutely no showing that, if a continuance were granted, either Ms. Taylor or Mr. Smith could be located. In fact, all indications pointed to the contrary. Since even the State's efforts to find Mr. Smith had proved futile, and Reese's three-month attempt to locate Ms. Taylor had been fruitless, the trial court could rightly conclude there was no 'probability' that these witnesses would be forthcoming if the case were continued. 'A motion for a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused.' *Fletcher v. State,* 291 Ala. 67, 68, 277 So.2d 882, 883 (1973); *Butler v. State,* 285 Ala. 387,

393, 232 So.2d 631, 635 (1970), cert. dismissed, 406 U.S. 939, 92 S.Ct. 1807, 32 L.Ed.2d 140 (1972) ('unless a gross abuse of the court's prerogative is shown')."

*Reese v. State,* 549 So.2d 148, 151 (Ala. Cr. App. 1989), overruled on other grounds, *Huntley v. State,* 627 So.2d 1013 (Ala. 1992). *See also Banks v. State,* 647 So.2d 46 (Ala. Cr. App. 1994); *Miller v. State,* 602 So.2d 488 (Ala. Cr. App. 1992).

Similarly, the appellant has not satisfied the second prong of the *Saranthus* test. He did not present any evidence that, even if the trial court granted a continuance, Burdette could be located and would testify. *Banks,* supra. In fact, both the prosecution and the defense had attempted to secure Burdette's attendance at trial, but neither had been successful. *Miller,* supra. Moreover, Burdette's statement was admitted into evidence by a stipulation of the prosecution and defense counsel. Therefore, the trial court did not abuse its discretion in denying the appellant's motion for a continuance.

*Jackson*, 836 So.2d at 939-941[12] (Vol. 37, Tab # R-90).  Jackson's petition fails to establish that he is entitled to relief as to this claim in the light of 28 U.S.C. § 2254(d).

## F.   THE CLAIM THAT THE STATE VIOLATED *BRADY V. MARYLAND*, 373 U.S. 83 (1963), DURING THE PROSECUTION OF PETITIONER JACKSON.  (PARAGRAPHS 158-162)

158-162.  This claim for relief in Jackson's petition is answered as follows:

---

[12] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added). Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

A.     This claim is procedurally barred.  The state courts refused to examine this claim—raised for the first time in Jackson's post-conviction petition—because Jackson failed to establish that the claim was not procedurally barred.  *See*, *Jackson*, 2009 WL 3805808, at *37-38 (Vol. 38, Tab # R-105).  Because the state court decision rests upon an adequate and independent state law ground, Jackson is not entitled to federal relief.  *See*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     Jackson has failed to state a claim upon which relief may be granted.  The petition fails to set forth facts which, if true, would establish that the

State of Alabama suppressed materially evidence favorable to Petitioner. *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted). *Cf.*, *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson v. Estelle*, 641 F.2d 250, 253 (5th Cir. 1981)).  The facts averred in Paragraphs 160(a) through (g) offer speculation, not offers of proof, as to whether *Brady* evidence exists.  Read in the light most favorable to Jackson, these factual averments complain that Jackson did not receive "open file" discovery, but do not establish that material evidence favorable to Jackson was suppressed by the prosecution.   Jackson's claim, therefore, is due to be denied for being inadequately pleaded.

D.   Without waiving the forgoing, the factual averments of Petitioner in paragraphs 158 through 162 are denied, except for those matters established by the state court record.

## G.   THE ALLEGATION THE STATE DICRIMINATED ON THE BASIS OF RACE DURING JURY SELECTION.   (PARAGRAPHS 161-163)[13]

161-163.  This claim for relief in Jackson's Petition is answered as follows:

A.   In resolving the issue presented, the trial court and the Alabama

---

[13] Claim "G" of the Petition contains a Paragraph 163 followed immediately by paragraphs enumerated "161" and "162," with claim "H" of the petition beginning, again, with a paragraph enumerated "163." (Doc. 1, p. 83-85)  This portion of Respondents' Answer deals with those paragraphs enumerated "161" through "163" as appear within claim "G" of the Petition.

Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

      B.    To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

      C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Jackson*, 836 So.2d at 946-948 (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 161 through 163 are denied, except for those matters established by the state court record.

In rejecting this claim, the Alabama Court of Criminal Appeals noted:

> The appellant's ninth argument is the State improperly used its peremptory challenges to discriminate on the basis of race and gender. He contends that he showed that there was a prima facie case of discrimination in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), during his trial, and that the trial court should have required the prosecution to provide race- and gender-neutral reasons for its strikes. For these reasons, he urges this court to remand this case to the trial court "for a hearing to determine whether the State discriminated on the basis of gender and race in its use of peremptory strikes." (Appellant's brief at p. 47.)
>
> After the jury was struck but before it was sworn, the following occurred:
>
>> "[Defense counsel]: Judge, at this point we would move under *Batson* and its progeny for the State to explain race-neutral reasons why it struck Numbers 116, 94, 96, 11, 26, and 165, which were the last set of jurors it struck before turning to Your Honor with the random system. Six of those seven are black. Eight of their total strikes were black.
>>
>> "The Court: That's not enough to establish a prima facie case.... What's your prima facie case?
>>
>> "[Defense counsel]: I don't believe they have race-neutral reasons for doing that Judge. I mean, six out of seven in a row.
>>
>> "The Court: That's not enough."

(R. 156.) Thus, the appellant preserved for appellate review his claim of discrimination based on race. However, he did not present his claim regarding discrimination on the basis of gender to the trial court. Therefore, we review that claim under the plain error rule. Rule 45A, Ala. R.App. P.

At the outset, we note that the record on appeal does not include any documents that show the race or gender of the prospective jurors in this case. Furthermore, it does not include copies of the questionnaires completed by the jurors before voir dire examination.

> "[T]he record does not contain the clerk's office jury list of any relevant information about the jurors. 'It is the appellant's duty to provide this court with a complete record on appeal.' *Knight v. State,* 621 So.2d 394 (Ala.Cr.App.1993). See also *Holder v. State,* 584 So.2d 872 (Ala.Cr.App.1991). We cannot predicate error on a silent record. *Hutchins v. State,* 568 So.2d 395 (Ala.Cr.App.1990)."

*Roberts v. State,* 627 So.2d 1114, 1116 (Ala.Cr.App.1993). *See also Baker v. State,* 683 So.2d 1 (Ala.Cr.App.1995). Thus,

> "[t]here is no evidence in the record that the prosecutor used his strikes in a racially discriminatory manner. There is no indication of the racial composition of the jury, though a jury strike list is contained in the record. Neither do we know whether any minorities in fact served on the jury. The record simply does not support an inference of plain error on the alleged *Batson* violation. Our Supreme Court in *Ex parte Watkins,* 509 So.2d 1074 (Ala.1987), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), refused to find plain error in a similar situation. It stated:

> " 'The record as a whole simply does not raise an inference that the state engaged in the practice of purposeful discrimination. Under the plain error rule this Court will "notice any *plain error or defect* in the proceeding under review, whether or not brought to the attention of the trial

court, and take appropriate appellate action by reason
thereof, whenever such error has or probably has adversely
affected the substantial rights of the petitioner." ... The
defendant cannot successfully argue that error is plain in the
record when there is no indication in the record that the act
upon which error is predicated ever occurred (i.e., the state's
use of its peremptory challenges to exclude blacks).'

"509 So.2d at 1076–77. See *Kuenzel v. State,* 577 So.2d 474
(Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.1991), cert.
denied, [502] U.S. [886], 112 S.Ct. 242, 116 L.Ed.2d 197
(1991) (stating that there was no evidence in the record to
support the contention that the State of Alabama used its
peremptory strikes to exclude blacks from the jury). 'Under
the circumstances of this case, we cannot conclude that a
prima facie case of purposeful discrimination has been
established.' *Pierce,* 576 So.2d at 242."

*Jenkins v. State,* 627 So.2d 1034, 1042 (Ala.Cr.App.1992),
aff'd, 627 So.2d 1054 (Ala.1993), cert. denied, 511 U.S. 1012,
114 S.Ct. 1388, 128 L.Ed.2d 63 (1994). *See also Freeman v.
State,* 555 So.2d 196 (Ala.Cr.App.1988), aff'd, 555 So.2d 215
(Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110
L.Ed.2d 284 (1990).

Likewise, the record before us does not raise an inference of
discrimination based on either race or gender. Nevertheless, the
appellant urges us to remand this case so the prosecution can
provide reasons for its use of its peremptory challenges.

"As this Court stated in *Ex parte Watkins,* 509 So.2d 1074,
1077 (Ala.1987), cert. denied, *Watkins v. Alabama,* 484 U.S.
918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), '[t]he defendant
cannot successfully argue that error is plain in the record
when there is no indication in the record that the act upon
which error is predicated ever occurred.' In effect, McNair is
requesting that we remand this case for a hearing on this
issue, on the strength of the circuit clerk's affidavit, so that a
record can be created for appellate review. We specifically
decline this request, for to do otherwise would unduly

66

> enlarge the scope of the plain error review as authorized by our appellate rules. See *Watkins*, supra, in which we had the opportunity in a death penalty case to remand for an evidentiary hearing on a *Batson* issue, but refused to do so."
>
> *Ex parte McNair*, 653 So.2d 353, 360 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). We, too, decline the appellant's request. Because the record before this court does not raise any inference of discrimination, we do not find any reversible error in this regard.

*Jackson*, 836 So.2d at 946-948[14] (Vol. 37, Tab # R-90).  The state court properly applied *Batson* inasmuch as it found Jackson had failed to carry his burden of establishing an inference of discrimination and inasmuch as it respected the discretion due the trial court in deciding whether a *prima facie* case had been met. *See Batson*, 476 U.S. at 96-97.  Pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to relief as to this claim.

## H.   THE CLAIM THAT THE STATE COURTS ERRED IN RULING JACKSON'S CONFESSION VOLUNTARY AND ADMISSIBLE. (PARAGRAPHS 163-167)

163-167.  This claim for relief in Jackson's Petition is answered as follows:

A.   In resolving the issue presented, the trial court and the Alabama Supreme Court made specific findings of fact.  In this proceeding, those findings of

---

[14] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Supreme Court during Jackson's direct appeal.  *Jackson*, 836 So.2d at 982-985 (Vol. 37, Tab # R-94).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law. Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 163 through 167 are denied, except for those matters established by the state court record.

In rejecting this claim, the Alabama Supreme Court noted:

> Jackson contends that the trial court erred in denying his motion to suppress a statement he made to a law-enforcement officer because, he says, the officer tricked him into making the statement. "'In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.' " *Kennedy v. State,* 640 So.2d 22, 26 (Ala. Crim. App. 1993), quoting *Bradley v. State,* 494 So.2d 750, 760–61 (Ala. Crim. App. 1985), aff'd, 494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). The trial court's ruling on a motion to suppress will not be disturbed unless it is palpably contrary to the great weight of the evidence. See *Dixon v. State,* 588 So.2d 903 (Ala. 1991); *Parker v. State,* 587 So.2d 1072, 1088 (Ala. Crim. App. 1991); *Rutledge v. State,* 680 So.2d 997, 1002 (Ala. Crim. App. 1996); and *Maples v. State,* 758 So.2d 1 (Ala. Crim. App. 1999), aff'd, 758 So.2d 81 (Ala. 1999), cert. denied, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000).
>
> Extrajudicial statements are prima facie involuntary and inadmissible; the duty rests on the trial court to determine whether the statement is voluntary, and unless it appears that it is voluntary it should not be admitted. See *Farrior v. State,* 728 So.2d 691 (Ala. Crim. App. 1998). The burden is on the State to show voluntariness and a *Miranda* predicate before such a statement can be admitted into evidence. See *Lewis v. State,* 535 So.2d 228 (Ala. Crim. App. 1988). "Whether a waiver is voluntary, knowing, and intelligent depends on the particular facts and underlying circumstances of each case, including the background, experience, and conduct of the accused—i.e., the totality of the circumstances." *Click v. State,* 695 So.2d 209, 218 (Ala. Crim. App. 1996). The voluntariness of an

69

inculpatory statement remains undetermined until the trial court has examined the totality of the circumstances surrounding the statement. See *Ex parte Hill,* 557 So.2d 838, 841 (Ala. 1989).

The trial court's finding that a statement was voluntary need only be supported by a preponderance of the evidence. *Dixon v. State,* supra. The test for the voluntariness of an extrajudicial confession or an inculpatory statement is whether, in light of all the surrounding circumstances, the statement was free from inducement, threat, or promise, either expressed or *983 implied, that would have produced in the mind of the accused any fear of harm or hope of favor. *Ex parte Price,* 725 So.2d 1063 (Ala. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999).

Moreover, "more subtle forms of psychological manipulation, such as trickery or deception by the police, have not been considered sufficiently coercive, standing alone, to render a confession or incriminating statement involuntary." *Ex parte Hill,* 557 So.2d at 841.

The trial court submitted the following order on return to remand:

> "On August 31, 2001, the Alabama Court of Criminal Appeals remanded this case to the trial court to conduct proceedings consistent with the Opinion as written and released by the Alabama Supreme Court on May 18, 2001. The Alabama Supreme Court [had] remanded this case to the Alabama Court of Criminal Appeals with the instructions to order the trial court to conduct a hearing to determine the admissibility of Defendant Jackson's extrajudicial statement. The trial court appointed the Honorable Bryan A. Stevenson to represent the defendant at the hearing, which was conducted on October 24, 2001. At the hearing, the defendant was represented by Mr. Stevenson, as well as the Honorable Randall Susskind, both of the Equal Justice Initiative of Alabama. The State of Alabama was represented by the Honorable Susan Redmond, Chief Deputy District Attorney for Montgomery County. After hearing the

testimony and accepting exhibits introduced into evidence, this Court advised the parties that they would have 7 days in which to present any Memorandum of Law supporting their respective positions. Defense counsel submitted a Memorandum of Law on November 2, 2001, and this Court has reviewed the same.

"The State of Alabama called its first and only witness, Detective A.J. Signore, of the Montgomery Police Department. Detective Signore testified that he had been employed with the Montgomery Police Department for 10 years, and in 1997, had been a homicide investigator. Pursuant to this case, Detective Signore testified that the defendant's mother signed a 'consent to search' her home wherein detectives confiscated certain items, including .380–caliber bullets. The detectives, before leaving the defendant's mother's home, told the mother that if the defendant came home she was to notify [them] that the police would like to talk to him. Later that afternoon, the defendant went to police headquarters to talk to the detectives. At the hearing, Detective Signore testified that the defendant, who was 18 years old at the time, reported to the police headquarters where Detective Signore and his partner, Detective C.D. Phillips, were on duty. Detective Signore testified that the defendant was read his *Miranda* rights, after which he signed the waiver form indicating that he understood his rights, that he had not been promised anything or threatened in any way and that he wished to give a statement to the police. The defendant's statement was taken in Detective Signore's office at the Montgomery Police Department with Detective Phillips also present.*

"Initially, the defendant denied even knowing the three other codefendants that were involved in the shooting. Detective Signore testified at the hearing that he had statements from the 3 codefendants stating that all 3 of them knew the defendant and that the defendant had been involved in the shooting. Detective Signore stated that in order to get the defendant to tell the truth about his relationship with the other 3 codefendants, he told the defendant that a Dairy

Queen [fast-food restaurant] cup had been found in the vehicle with the defendant's fingerprints on it. After Detective Signore told the defendant this information, the defendant then told Detective Signore that, in fact, he did know the other codefendants, but denied any involvement in the shooting. After telling Detective Signore that he knew the other codefendants, he asked the detective if he could make another statement. In his second statement, Defendant Jackson admitted to having been with the other codefendants at the time of the murder and to possessing a .380 automatic pistol.

"The defense called Ms. Rosalyn Jordan as its first witness. Ms. Jordan is a sixth-grade teacher at Patterson Elementary School. She testified that the defendant had been a student in her classroom and her records indicated that he had failed the first and third grades. She stated that the defendant was a low-achiever and that he was 13 years old in the sixth-grade. She also stated that she had only seen the defendant a few times since he had been a sixth-grader in her class. The defense also called Ms. Thelma Owens, who is an employee at the Southern Poverty Law Center. She is related to the defendant, as his aunt, and she stated that she helped to raise him. She went on to state that the defendant was very respectful of her and any type of authority figures.

"There was absolutely no question that Detective Signore lied to the defendant about the fingerprints on the Dairy Queen cup. It is important to recognize, however, that the lie was told by Detective Signore only in order to find out if the defendant did, in fact, have a relationship with the other codefendants. The lie was not told to induce the defendant to confess [to] a crime. Alabama Courts have repeatedly held that a confession is not inadmissible merely because it was induced by a trick or misrepresentation. As defense counsel pointed out in its Memorandum of Law, although police deception is not conclusive as to the voluntariness of a statement, it is certainly a factor to be considered in the determination of its voluntariness. See *Frazier v. Cupp,* 394 U.S. 731[, 89 S.Ct. 1420, 22 L.Ed.2d 684] (1969). This Court

would again note, however, that the deception used in this case was not deception that led to a confession to the actual crime. The deception or misrepresentation used by Detective Signore was only used in order to establish whether or not a relationship existed between the defendant and codefendants. After the statement was made concerning the fingerprints on the Dairy Queen cup, Defendant Jackson admitted only to knowing the codefendants, but denied any involvement in the actual crime.

"This Court must look at the totality of the circumstances in analyzing whether or not the defendant's extrajudicial statement was voluntary or not. The Court is convinced, after conducting the hearing, that the defendant did, in fact, voluntarily come to the police station and, after being read his *Miranda* rights and signing his waiver, he agreed to talk to the detectives. There was no testimony and/or evidence presented that would indicate that the defendant could not knowingly and voluntarily waive his rights and agree to talk with the detectives. There was also nothing unusual or extraordinary about the room in which the statement was taken, or the manner in which the statement was obtained. As Justice Stuart so ably stated in her dissent [to the Supreme Court's opinion of May 18, 2001], there is no question that Detective Signore made misrepresentations concerning the fingerprints found on the Dairy Queen cup; however, whether or not the misrepresentations render a statement involuntary is a question of law and does not require the gathering of additional facts in order to make a decision. This trial court, however, has conducted the hearing as ordered by the majority and would point out that no new information or facts were gleaned from this hearing and this court finds that after examining the totality of the circumstances surrounding the statement of the defendant, said statement was made voluntarily and is therefore admissible.

"Detective Signore's office in which the defendant's statement was taken is a normal detective office containing a desk and two chairs positioned facing the desk. Defense counsel went into very elaborate details about the office in its

Memorandum of Law trying to show that the room would
imply that the statement was not voluntary. The Court found
nothing unusual, deceptive, or coercive about the room in
which defendant's statement was taken at Montgomery
Police Department Headquarters."

The trial court's findings are adequately supported by the
record. We have carefully reviewed the record on return to
remand to determine whether Jackson voluntarily and
knowingly waived his *Miranda* rights before making the
inculpatory statement to the police and whether the statement
was voluntary. After considering the totality of the
circumstances surrounding Jackson's statement, we conclude
that the State met its burden in proving that Jackson voluntarily
and knowingly waived his *Miranda* rights and that he made his
statement voluntarily. The record does not reveal that Jackson
was threatened or coerced into giving a statement. The weight
and preponderance of the evidence support the trial court's
decision to deny the motion to suppress. Therefore, the trial
court did not err in denying the motion to suppress Jackson's
statement.

*Jackson*, 836 So.2d at 982-985[15] (footnote omitted) (Vol. 37, Tab # R-94).  Under

the deference required by the AEDPA and in the light of Jackson's failure to carry

his burden as to this claim, this claim is due to be denied.

---

[15] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at
1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253).
This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at
856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and
comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must
determine what arguments or theories supported or... *could have supported*, the state court's decision and then must
ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the
holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).
Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state
court standard was erroneous or merits AEDPA relief warrants denial of this claim.

# I.   THE ALLEGATION THE TRIAL COURT IMPROPERLY ADMITTED PHOTOGRAPHS AT JACKSON'S TRIAL. (PARAGRAPHS 168-169)

168-169.  This claim for relief in the Petition is answered as follows:

A.   In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.   To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.   This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Jackson*, 836 So.2d at 950-951 (Vol. 37, Tab # R-90).  The state court resolution of this issue

was neither contrary to, nor an unreasonable application of clearly established federal law. Further, the State court resolution was based on a reasonable determination of the facts. Thus, Jackson's Petition must be denied. *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 168 through 169 are denied, except for those matters established by the state court record.

In rejecting this claim, the Alabama Court of Criminal Appeals noted:

> The appellant's eleventh argument is that the trial court improperly admitted photographs and videotapes that allegedly served only to inflame and prejudice the jury. Specifically, he contends that the introduction of one picture of the victim after he was killed seriously prejudiced him. With regard to the remaining photographs and videotapes, he makes only generalizations without specifying which ones he finds objectionable. Because the appellant did not object to the admission of the photographs and the videotapes at trial, we must determine whether the admission of these items constituted plain error. Rule 45A, Ala. R.App. P.

> When reviewing these photographs and videotapes, we are guided by the following principles:

>> "'Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence.... Finally photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.' "

*Gaddy v. State,* 698 So.2d 1100, 1148 (Ala. Cr. App. 1995), aff'd, 698 So.2d 1150 (Ala.), cert. denied, 522 U.S. 1032, 118 S.Ct. 634, 139 L.Ed.2d 613 (1997) (quoting *Ex parte Siebert,* 555 So.2d 780, 783–84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990)).

> "'[P]hotographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and are based on undisputed matters. *Magwood* [*v. State*], 494 So.2d [124, 141 (Ala. Cr. App. 1985), affirmed, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986) ]. The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried. *Id.* Also, a photograph may be gruesome and ghastly, but this is not a reason to exclude it as long as the photograph is relevant to the proceedings, even if it tends to inflame the jury. *Id.*'

> "*Ex parte Bankhead,* 585 So.2d 112 (Ala. 1991). Accord, *Ex parte Siebert,* 555 So.2d 780, 783–84 (Ala. 1989), cert. denied, [497] U.S. [1032], 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); *McElroy's* at § 207.01(2)."

*Parker v. State,* 587 So.2d 1072, 1092–93 (Ala. Cr. App. 1991), opinion extended after remand, 610 So.2d 1171 (Ala. Cr. App.), aff'd, 610 So.2d 1181 (Ala. 1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993). Photographs that depict the crime scene are relevant and therefore admissible. *Aultman v. State,* 621 So.2d 353 (Ala. Cr. App. 1992), cert. denied, 510 U.S. 954, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993); *Ex parte Siebert,* 555 So.2d 780, 783–84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); *Hill v. State,* 516 So.2d 876 (Ala.Cr.App.1987). Finally, "'"'"photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." *Ex parte Siebert,* 555 So.2d 780, 784 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See generally C. Gamble, *McElroy's Alabama Evidence,* § 207.01(2) (4th ed. 1991). "The photographs of the victim were properly admitted

into evidence. Photographic exhibits are admissible even though they may be cumulative, ... demonstrative of undisputed facts, ... or gruesome...." *Williams v. State,* 506 So.2d 368, 371 (Ala. Cr. App. 1986), cert. denied, 506 So.2d 372 (Ala. 1987).'

"*DeBruce v. State,* 651 So.2d 599, 607 (Ala. Cr. App. 1993). See also *Ex parte Bankhead,* 585 So.2d 112 (Ala. 1991). The court did not err in allowing photographs of the victim's body to be received into evidence."

*Hutcherson v. State,* 677 So.2d 1174, 1200 (Ala. Cr. App. 1994), rev'd on other grounds, 677 So.2d 1205 (Ala. 1996). *See also Giles v. State,* 632 So.2d 568 (Ala. Cr. App. 1992), aff'd, 632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994); *Haney v. State,* 603 So.2d 368 (Ala. Cr. App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).

In this case, the photographs of the victim depict the character and location of his wounds. Nevertheless, these photographs are neither unnecessarily gruesome nor gory. We have also reviewed the remaining photographs and videotapes, and we do not find that they were unduly prejudicial to the appellant. Those photographs and videotapes were relevant and admissible because they depict the crime scene, the vehicles driven by the victim and the appellant, and the evidence recovered during the investigation of the crime. The appellant has not shown that the admission of any of the photographs or videotapes affected or probably affected his substantial rights. Accordingly, the trial court's admission of the photographs and videotapes did not constitute plain error.

*Jackson*, 836 So.2d at 950-951[16] (Vol. 37, Tab # R-90).

---

[16] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout. *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions. *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted). Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

In his state court argument, as here, Jackson cited *Woodson v. North Carolina*, 428 U.S. 280 (1976), a case dealing with statutes that automatically impose a death sentence upon conviction.  Having no direct bearing on the issue presented by this claim, *Woodson* does not offer Jackson an AEDPA-compliant basis for relief in this cause.

The other case relied upon by Jackson, *Gardner v. Florida*, 430 U.S. 349 (1977), is similarly inapplicable to Jackson's petition.  In *Gardner*, the Court discussed the procedural protections due a defendant convicted of capital murder prior to being sentenced on the basis of confidential information contained in a pre-sentence report.  Respectfully, *Gardner* offers Jackson no "clearly established" federal law basis for relief under § 2254(d).

## J.   JACKSON'S JUROR MISCONDUCT CLAIM WAS PROPERLY DENIED.  (PARAGRAPHS 170-177)

170-177.   This claim for relief in Jackson's Petition is answered as follows:

A.     In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual

---

holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added). Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of state post-conviction relief. *Jackson*, 2009 WL 3805808, at *9-15 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 170 through 177 are denied, except for those matters established by the state court record.

In rejecting this claim as it pertains to Juror J.G., the Alabama Court of Criminal Appeals noted:

> Jackson first asserted that juror J.G. failed to disclose that he owned both a 9mm and a .357–caliber gun at the time of trial and that he "performed outside experimentation by testing the bullets to discover if the type of gun that Jackson was allegedly carrying at the time of the crime could have fired the bullet that killed the victim. These discoveries were then passed along to the jury members...." (R. 656.)

> "To prevail on a claim of juror misconduct, the petitioner must establish that he 'might have been prejudiced' by the jurors' failure to respond truthfully to a question posed on voir dire. See *Ex parte Stewart,* 659 So.2d 122 (Ala. 1993).

> "'It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See *Fabianke v. Weaver,* 527 So.2d 1253 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire "automatically entitles [the defendant] to a new trial or reversal of the cause on appeal." *Freeman v. Hall,* 286 Ala. 161, 166, 238 So.2d 330, 335 (1970); see also *Dawson v. State,* [710 So.2d 472] at 474 [ (Ala. 1997) ]; and *Reed v. State,* [547 So.2d 596 (Ala. 1989) ]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is "whether the defendant might have been prejudiced by a veniremember's failure to make a proper response." *Ex parte Stewart,* 659 So.2d [122] at 124 [ (Ala. 1993) ]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court's discretion.'

> "*Ex parte Dobyne,* 805 So.2d 763, 771–72 (Ala. 2001) (footnote omitted)." *Hooks v. State,* 21 So.3d 772, 780–81 (Ala. Crim. App. 2008).

> "The might-have-been-prejudiced standard, although on its face

a light standard, actually requires more than simply showing that juror misconduct occurred. '[T]he question whether the jury's decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case.' *Ex parte Apicella,* 809 So.2d 865, 871 (Ala. 2001). Thus, '[i]n applying this standard we look at "the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about." ' *Hooks,* 21 So.3d at 781 (quoting *DeBruce v. State,* 890 So.2d 1068, 1078 (Ala. Crim. App. 2003), overruled on other grounds, *Ex parte Jenkins,* 972 So.2d 159 (Ala. 2005))."

*Bryant v. State,* —— So.3d at ——. *See also Reynolds v. City of Birmingham,* 723 So.2d 822 (Ala. Crim. App. 1998); *Dawson v. State,* 710 So.2d 472 (Ala. 1997); *Ex parte Potter,* 661 So.2d 260 (Ala. 1994).

> "The form of prejudice that would entitle a party to relief for a juror's nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. *Ex parte Ledbetter,* 404 So.2d 731 (Ala. 1981); *Warrick v. State,* 460 So.2d 320 (Ala. Crim. App. 1984); and *Leach v. State,* 31 Ala.App. 390, 18 So.2d 285 (1944). If the party establishes that the juror's disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. *Id.* Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in *Ledbetter,* supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in *State v. Freeman,* 605 So.2d 1258 (Ala. Crim. App. 1992)."

*Ex parte Dobyne,* 805 So.2d 763, 772–73 (Ala. 2001).

In regard to the introduction of extraneous facts during jury deliberations, we have stated:

> "'Extraneous facts introduced in jury deliberations can result in actual prejudice or in prejudice as a matter of law, also called presumed prejudice.' *Ex parte Arthur,* 835 So.2d 981, 983 (Ala. 2002). The Alabama Supreme Court in *Ex parte Apicella*[, 809 So.2d 865 (Ala. 2001),] discussed the differences between presumed prejudice and actual prejudice:

> "'Apicella also argues that we should hold the extraneous material introduced through S.B.'s conversation with T.R. to be prejudicial as a matter of law. Apicella supports this argument with the following language from *Knight* [*v. State*], 710 So.2d [511,] 517 [ (Ala.Crim.App.1997) ]:

> "'"'Juror misconduct will justify a new trial ... when from the extraneous facts prejudice may be presumed as a matter of law.' *Whitten v. Allstate Ins. Co.,* 447 So.2d 655, 658 (Ala. 1984).... However, in some cases, 'the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.' *Id.* (prejudice presumed as a matter of law from jury's consulting encyclopedia and dictionary definitions ...)."

> "'(Quoting *Minshew v. State,* 594 So.2d 703, 716 (Ala. Crim. App. 1991)).

> "'On the other hand, we have also held that "mere exposure to [a] definition does not require a new trial as a matter of law." *Pearson v. Fomby,* 688 So.2d 239, 245 (Ala. 1997). Our holding in *Pearson* serves to emphasize the limitations of the doctrine of "prejudice as a matter of law."

> "'Generally, a presumption of prejudice applies only in a case in which the jury's consideration of the extraneous material was "'crucial in resolving a key material issue in the case.'" *Dawson v. State,* 710 So.2d 472, 475 (Ala. 1997)

(citing *Hallmark v. Allison,* 451 So.2d 270, 271 (Ala. 1984), and *Ex parte Thomas,* 666 So.2d 855 (Ala. 1995)).

"'We are not willing to presume prejudice as a matter of law in this case. No evidence indicates that extraneous information arising from S.B.'s conversation influenced S.B.'s vote or that the information was ever considered by any other member of the jury. This case is distinguishable from cases such as *Nichols v. Seaboard Coastline Railway,* 341 So.2d 671 (Ala.1976) (prejudice found as a matter of law where juror brought definitions into the jury room during deliberations and copied them onto a chalkboard). We conclude that the particular circumstances of this case provide no basis for finding prejudice as a matter of law.'"

*Taite v. State,* 48 So.3d 1, 9 (Ala. Crim. App. 2009), quoting *Ex parte Apicella,* 809 So.2d 865, 871–72 (Ala. 2001).

At the evidentiary hearing, J.G. testified that at the time of Jackson's trial he owned a 9–millimeter gun and a .357–caliber gun. He testified that he did not compare the bullets for the two guns. J.G. said: "I don't know if you can interchange each [magazine] or not. I never tried it or anything like that." (Record on remand, p. 40.) Jackson asked J.G. no questions concerning his responses to voir dire questions.

The circuit court made the following findings in regard to juror J.G.:

"Counsel alleged that [J.G.] owned a nine millimeter but had failed to reveal that at the time of trial. It was also alleged that he owned a .357 and had compared the .357 ammunition to the nine millimeter ammunition. [J.G.] testified at the evidentiary hearing that he did, in fact, own a nine millimeter and a .357, but he did not know if the ammunition on these weapons was interchangeable. He also stated that he did not ever during jury deliberations of the capital murder case compare these bullets."

(Supp. R. 6.)

84

Jackson did not question J.G. concerning his responses or lack of responses to voir dire questions. Our review of the trial record shows that juror J.G. was asked if he owned any guns. (Trial R. 60.) J.G. answered that he had just purchased a 9mm gun. He was then asked if he knew the difference between ammunition for a 9mm gun and ammunition for a .357–caliber gun. He answered that he had "never seen a .357 [type of ammunition]." (Trial R. 61.) At the postconviction hearing, J.G. testified that he did not compare the ammunition. Postconviction counsel stated at the hearing that neither of Jackson's trial attorneys would be testifying at the postconviction evidentiary hearing.

"[Jackson] is not entitled to relief on this juror-misconduct claim because he neither proffered nor introduced evidence that a true answer by [J.G.] would have caused [trial counsel] to challenge [J.G.] for cause or to exercise a peremptory challenge against her."

*Ex parte Dobyne,* 805 So.2d at 773. *See Jones v. State,* 753 So.2d 1174, 1203 (Ala. Crim. App. 1999) ("[W]e find nothing to indicate that Jones's trial counsel would have struck [the juror] had he known the information [the juror] revealed at the evidentiary hearing."). Moreover, no evidence was presented at the evidentiary hearing indicating that J.G. had compared the ammunition. Jackson failed to show by a preponderance of the evidence that any juror misconduct occurred as to juror J.G. *See* Rule 32.3, Ala. R.Crim. P.

*Jackson,* 2009 WL 3805808, at 9-12 (footnotes omitted) (Vol. 38, Tab # R-105).

In regard to Jackson's claim as to Juror J.B., the Court wrote:

Jackson next argues that juror J.B. visited the scene of the crime and shared her findings with the other jurors. He asserted in his original brief that J.B.'s visit to the crime scene triggers the "presumed-prejudice" standard; therefore, he argues, he is entitled to a new trial.

For the postconviction proceedings, the testimony of J.B. was conducted by telephonic deposition. Most of J.B.'s direct examination consisted of her reading an affidavit she had executed in April 2004. The affidavit stated, in pertinent part:

> "During the trial, I drove by the Smiley Court area and the area where the shooting occurred. I also drove to the home of Ms. Flowers, where the car theft occurred. It was important for me to see the place where the shooting and the car theft occurred. During the deliberations this information was important and I did not feel that I could not [sic] make a judgment about what happened on the night of the crime before I had visited these places."

(Record on remand, p. 98.) J.B. testified at the evidentiary hearing that she did not remember going to the Smiley Court area and did not remember anything she might have learned from going there. On cross-examination, J.B. testified that she did not write the affidavit and that her verdict was based on the evidence presented at trial—not any outside evidence.

The circuit court made the following findings concerning juror J.B.:

> "The final witness, [J.B.], currently lives in Las Vegas, Nevada, and her deposition had to be taken by telephone. Counsel for both sides conducted telephonic deposition on March 1, 2010, of [J.B.] During the telephonic deposition, [J.B.] stated that she recalled meeting with counsel for [Jackson] back in 2004 and signing an affidavit. She did not recall who wrote up the affidavit but only that she, in fact, did sign it. The affidavit stated that [J.B.] went to the area of the shooting and the area where the car theft had occurred. She stated that she went to both locations because she was concerned about whether or not [Jackson] was the shooter. During the telephonic deposition, however, [J.B.] stated that she did not recall going to the scene of the crime. She stated that she had been involved in two car accidents and was currently on medication. She went on to state that she did not

86

believe that anything has affected her memory. The Court recognizes that there are inconsistencies regarding [J.B.'s] information; however, there is not conclusive proof as to juror misconduct on her part.

"A defendant who is seeking a new trial on the basis of juror misconduct has the initial burden to prove that a juror or jurors did, in fact, commit the alleged misconduct. See *Dawson v. State,* 710 So.2d 472 (Ala. 1997). The Court heard from three witnesses at the evidentiary hearing and reviewed the telephonic deposition taken of the final juror. The Court did not find that counsel for [Jackson] had presented any alleged misconduct that would warrant a new trial. The Court examined the juror's answers and conduct from jury selection and did not find any strong evidence of juror misconduct.

"Wherefore, it is ordered that [Jackson's] request for post-conviction relief for juror misconduct is hereby denied."

(Supp. R. 6–7.)

First and foremost, when pursuing a claim of juror-misconduct, the petitioner must establish that misconduct actually occurred. "A defendant [seeking relief] on the basis of juror misconduct has the initial burden to prove that a juror or jurors did in fact commit the alleged misconduct." *Dawson v. State,* 710 So.2d 472, 475 (Ala.1997).

Even if we were to conclude that J.B. did indeed visit the crime scene, there was no testimony presented as to what evidence or insight J.B. gained by that visit. Nor did Jackson prove that J.B. shared her views with any of her fellow jurors. None of the jurors were asked about this during the evidentiary hearing. In *Reed v. State,* 547 So.2d 596 (Ala. 1989), the Alabama Supreme Court stated:

"We cannot agree with the defendant that the verdict rendered might have been unlawfully influenced, where the results of the home experiment were known only to the one

> juror who conducted the experiment and that juror remained
> unaffected by the experiment."

> 547 So.2d at 598. Based on the considerations addressed in
> *Taite v. State,* 48 So.3d at 9, this case does not present a
> situation where prejudice is presumed as a matter of law.
> Jackson failed to meet his burden of proof in regard to the
> juror-misconduct claim related to J.B. Accordingly, the circuit
> court did not err in denying Jackson relief on this claim.

*Jackson,* 2009 WL 3805808, at 13-15[17] (Vol. 38, Tab # R-105).

Jackson's reliance on *Turner v. Louisiana*, 379 U.S. 466 (1965), is

misplaced, as Jackson's claim is completely unrelated to the employment of

material witnesses as bailiffs for a sequestered jury, the subject-matter of *Turner*.

Likewise, Jackson's reliance on *Irwin v. Dowd*, 366 U.S. 717 (1961) is misplaced,

as *Irwin* dealt with the necessity of a change of venue wrought by pre-trial

publicity and actual prejudice suggested by venire responses during voir dire.[18]

Jackson's reliance on *Remmer* does not offer relief to Jackson as there was

no indication of an improper contact between a juror and a third-party in this case,

nor did the Federal Bureau of Investigation investigate any juror.   *Remmer* is

---

[17] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added). Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.
[18] To the extent the Court finds *Irwin* applicable to the facts of this case, the Court noted a trial court's finding on a juror's impartiality is subject to reversal only where such error is manifest.  *Irwin*, 366 US. at 723-724.

further inapposite to the present case because a record of what transpired was made in this case, at a hearing, with all parties participating. *Compare*, *Remmer*, 347 U.S. 229-230 ("The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."). Essentially, the state courts complied with the holding of *Remmer* regarding investigation of Jackson's juror misconduct claims.

To the extent Jackson cites *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984), in support of his claim, that case illustrates why *habeas* relief is unavailable to Jackson. The Alabama Court of Criminal Appeals clearly applied that portion of the Court's reasoning requiring that a party "first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id*. at 556. Jackson, then, is not entitled to relief as to this claim.

## K. JACKSON'S SENTENCE IS NOT AFFECTED BY THE CONSTITUTIONAL PROHIBITION AGAINST IMPOSITION OF A DEATH SENTENCE UPON THE MENTALLY RETARDED. (PARAGRAPHS 178-183)

178-183. This claim for relief in Jackson's Petition is answered as follows:

89

A.     In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.     This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of state post-conviction relief.  *Jackson*, 2009 WL 3805808, *38-40 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court

resolution was based on a reasonable determination of the facts.  Thus, Jackson's

Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Without waiving the forgoing, the factual averments of

Petitioner in paragraphs 170 through 177 are denied, except for those matters

established by the state court record.

In denying relief on this claim, the Alabama Court of Criminal Appeals

wrote:

> Jackson next argues that he is mentally retarded and that his
> sentence of death violates the United States Supreme Court's
> decision in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242,
> 153 L.Ed.2d 335 (2002). Specifically, he argues that he made a
> prima facie showing that he is mentally retarded; therefore, he
> argues, he is entitled to an evidentiary hearing and to an
> opportunity to prove that claim.
>
> The United States Supreme Court in *Atkins v. Virginia* held that
> it is unconstitutional to sentence a mentally retarded defendant
> to death. The Court left it to the individual states to adopt a
> definition of mental retardation. Alabama has yet to enact
> legislation addressing this issue; however, the Alabama
> Supreme Court in *Ex parte Perkins,* 851 So.2d 453 (Ala. 2002),
> adopted the most liberal definition of mental retardation as
> defined by those states that had adopted legislation prohibiting
> the execution of a mentally retarded defendant. To meet the
> definition of mental retardation under *Perkins,* the defendant
> must: (1) have significantly subaverage intellectual functioning
> (an IQ of 70 or below); (2) have significant defects in adaptive
> behavior; and (3) these two factors must have manifested
> themselves before the defendant attained the age of 18. "*Atkins*
> applies retroactively to all cases, even those on collateral
> review." *Smith v. State,* 71 So.3d 12, 17 n. 2 (Ala. Crim. App.
> 2008).

In addressing this claim, the circuit court made the following findings:

> "Jackson contends that 'records of the Alabama Department of Corrections in 1997 establish that [he] received a Full Scale IQ score of 75 on a Beta Test.' (Second Amended Petition on p. 73.) While Jackson argues his IQ score of 75 is evidence of subaverage intellectual functioning, the appellate courts of Alabama have considered similar IQ scores as evidence an individual *is not* mentally retarded. *See,* e.g., *Ex parte Smith,* [[Ms. 1010267, March 14, 2003] ⸻ So.3d ⸻ (Ala.2003) ] (holding that Smith's overall IQ of 72 'seriously undermines any conclusion Smith suffers from significant subaverage intellectual functioning as contemplated under even the broadest definitions [of mental retardation]'); *Peraita v. State,* 897 So.2d 1161, 1207 (Ala.Crim.App.2003) (holding that evidence Peraita, at age 19, had an IQ of 75 'does not establish [he] had significantly subaverage intellectual functioning').

> "The evidence presented at trial did not raise the slightest inference Jackson suffers significant or substantial deficits in adaptive functioning. Jackson was able to maintain an interpersonal relationship for more than a year with his girlfriend and fathered a child. Jackson lied to police about his role in the victim's murder and only admitted being at the scene after police lied about finding his fingerprints on a cup. The trial court found in his sentencing order that 'Jackson was the ring leader in this offense.' (C.R. 176.) Jackson's father testified that Jackson 'was an intelligent young man' that could do his school [work] but that 'he wasn't interested in it.' (R. 572.) While Jackson's sixth grade teacher testifying before his Court described Jackson as 'a low achiever' in school, she never indicated he suffered from subaverage intellectual functioning or mental retardation. (R. 61.)

> "The Court finds that [this] allegation ... is without merit."

(R. 949–51.) (Emphasis in original.)

An evidentiary hearing on a claim of mental retardation is not necessary in every case. "However, before a circuit court finds a petitioner to be entitled to a hearing under Rule 32.9, the court must find that the petitioner met his or her burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. Rule 32.3, Ala.R.Crim.P." *Fincher v. State,* 724 So.2d 87, 89 (Ala. Crim. App. 1998). We have held that a hearing is not necessary if it is clear from the record that the defendant does not meet the broadest definition of mental retardation adopted by the Alabama Supreme Court in *Perkins. See Ferguson v. State,* 13 So.3d 418, 436–37 (Ala. Crim. App. 2008).

The record clearly shows that Jackson does not meet the broadest definition of mental retardation. By counsel's own admission, Jackson's IQ score is 75. A review of Jackson's statements to police shows an articulate young man. At the sentencing hearing, Jackson's father described Jackson as a intelligent young man who was bored with school. The trial court, which had an opportunity to observe Jackson, stated in its sentencing order that there was no evidence indicating that Jackson suffered from any mental disturbance or that he was unable to appreciate the criminality of his conduct. Jackson maintained a relationship and fathered one child.

Jackson does not meet the broadest definition of mental retardation adopted by the Alabama Supreme Court in *Ex parte Perkins.* Accordingly, *Atkins v. Virginia* does not bar the imposition of the sentence of death in Jackson's case, and this claim was correctly summarily dismissed.

*Jackson,* 2009 WL 3805808, *38-40[19] (Vol. 38, Tab # R-105).

---

[19] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout. *Hill,* 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson,* 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions. *McFarland,* 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported,* the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court. *Harrington,* 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

In *Atkins,* the Court specifically referenced a cut-off score of 70 in relation to the diagnostic criteria for mental retardation.  *Atkins*, 536 U.S. 304, 308 n.3 (2002).[20]   After noting the significance of an IQ score of 70 or below in its discussion of mental retardation, the Court specifically left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences."  *Atkins*, 536 U.S. 317.  In doing so, the Court explicitly recognized that the definitions of mental retardation would not be identical, but would generally conform to the clinical definition cited in its opinion.  *Atkins*, 536 U.S. at 317 n.22.

As the Court noted in *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004):

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. *The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations*.

(emphasis added).  Thus, the Court's decision in *Atkins* to "leave to the State[s]" the task of enforcing the ban on execution of the mentally retarded and its recognition of the probable lack of homogeny in state-by-state definitions firmly

---

[20] *Cf*, *Atkins*, 536 U.S. at 316.   The Supreme Court placed importance on IQs of 70 or below, such as when it discussed the "evolving standards of decency."   The Court specifically noted of the number of offenders executed possessing a "known IQ less than 70."   *Id*.

94

places this issue in the "more leeway" category described in *Alvarado*.   By adopting diagnostic criteria that find support in footnote 3 of *Atkins,* as well as the Court's nationwide survey of executed offenders "possessing a known IQ less than 70," the state court factual finding relied on an application of *Atkins v. Virginia* that is wholly reasonable.

The Eleventh Circuit has previously accepted, and applied, this diagnostic criteria without question.  *See*, *e.g.*, *Holladay v. Allen*, 555 F.3d 1346, 1353 (11th Cir. 2009) (*citing*, *Ex parte Smith*, 2007 WL 1519869 (Ala. 2007).  *See also*, *Thomas v. Allen*, 607 F.3d 749 (11th Cir. 2010).   Further, Alabama's diagnostic criteria, in this regard, is the same as Florida's standard which the Eleventh Circuit has accepted and applied.  *Carroll v. Secretary*, *Fla. Dept. of Corrs.*, 574 F.3d 1354, 1367 (11th Cir. 2009) (*citing*, *Jones v. State*, 966 So.2d 319, 329 (Fla. 2007)).

As Alabama's criteria for determining mental retardation constitutes a reasonable application of *Atkins*, Jackson is not entitled to relief.

## L.   SHONELLE JACKSON'S CLAIM THAT HIS AGE RENDERS HIS DEATH SENTENCE CRUEL AND UNUSUAL.  (PARAGRAPHS 184-187)

184-187.  This claim for relief is answered as follows:

A.     In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

95

B.    To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of state post-conviction relief.  *Jackson*, 2009 WL 3805808, *41 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 184 through 187 are denied, except for those matters established by the state court record.

In denying relief as to this claim, the Alabama Court of Criminal Appeals found:

…the circuit court…stated:

"Since the second amended petition was filed, the United States Supreme Court issued the opinion of *Roper v. Simmons,* 543 U.S. 551 (2005). This opinion states that it is unconstitutional to execute juveniles under the age of 18. In the present case, the Defendant Jackson was 18 years old at the time of the offense. Even though he had just turned 18, he was 18."

(R. 974–75.) (Emphasis omitted.)

The United States Supreme Court in *Roper* stated its rationale for drawing the line at 18 years of age:

"Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson* [*v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) ], drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The

97

> age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest."

543 U.S. at 574, 125 S.Ct. 1183.

> Recently we held that the United States Supreme Court's decision in *Roper v. Simmons* does not allow this Court to consider the mental age of a defendant but only the chronological age. *See Thompson v. State,* [Ms. CR–05–0073, February 17, 2012] —— So.3d —— (Ala.Crim.App.2012). Jackson was 18 years of age at the time of the robbery/murder; therefore, *Roper v. Simmons* does not bar his sentence of death.

*Jackson*, 2009 WL 3805808, at *41[21] (Vol. 38, Tab # R-105).   The AEDPA prevents Jackson from obtaining relief as to this claim.  28 U.S.C. § 2254(d).

## M.  JACKSON'S ALLEGATION HIS DEATH SENTENCE IS DISPROPORTIONATE.  (PARAGRAPHS 188-191)

188-191.  This claim for relief in Jackson's Petition is answered as follows:

A.      Jackson failed to present this claim to any state court for review prior to presenting this claim in this petition for writ of *habeas corpus*. Thus, this claim is unexhausted and it is not properly before this Court for review.  *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Engle v. Issac*, 456 U.S. 107, 113-14, 117,

---

[21] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill*, 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson*, 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions.  *McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.  *Harrington*, 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

124-25 (1982); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).  Dismissal to allow Jackson to exhaust this claim would be futile as he is now barred from raising this issue as a federal constitutional question in state court.  First, a Rule 32 petition at this point would be barred by the statute of limitations.  *Ala.R.Crim.P.*, Rule 32.2(c).  Second, another Rule 32 petition by Jackson would be barred by Alabama's ban on successive petitions.  *Ala.R.Crim.P.*, Rule 32.2(b).  Consequently, this claim is procedurally defaulted from this Court's review.  *See Collier v. Jones*, 910 F.2d 770, 772 (11th Cir. 1990) ("When a petitioner has failed to present a claim to the state court and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court."); *Baldwin v. Johnson*, 152 F.3d 1304, 1318 (11th Cir. 1998).

        B.      Although the Alabama Court of Criminal Appeals conducted a proportionality review of Jackson's sentence, such review was performed under state statutory law.  Ala. Code § 13A–5–53(b)(3) (1975).  As noted above, this claim was never presented to the state courts as a federal claim by Jackson, nor does the state court opinion reflect that it was reviewed as a federal law claim. *Jackson*, 836 So.2d at 965 (Vol. 37, Tab # R-90).  Accordingly, the state court resolution of this issue was based on an adequate and independent state law ground arising outside of the scope of this Court's *habeas* jurisdiction.

C.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 188 through 191 are denied, except for those matters established by the state court record.

## N.     JACKSON'S CLAIM THAT ROBBERY WAS IMPROPERLY USED AS A CAPITAL ELEVATOR AND CAPITAL AGGRAVATOR.

192-193.     This claim for relief in Jackson's petition is answered as follows:

A.     In resolving the issue presented, the trial court and the Alabama Court of Criminal Appeals made specific findings of fact.  In this proceeding, those findings of fact are presumed correct.

B.     To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

C.    This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's direct appeal.  *Jackson*, 836 So.2d at 958-959 (Vol. 37, Tab # R-90).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

D.    Jackson cannot prevail under the AEDPA as a matter of law. The cases he cites in support of his Petition were all decided before 1985.  In 1999, however, the Court conceded that it had "never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the 'double counting' theory that the Tenth Circuit advanced in *McCullah*."  *Jones v. United States*, 527 U.S. 373 (1999).[22]  This concession by the Court in *Jones* illustrates that, for AEDPA purposes, there is no "clearly established Federal law, as determined by the Supreme Court of the United States" on this issue.  *See Marshall v. Rogers,* 569 U.S. ___, 2013 WL 1285304 (April 1, 2013).

---

[22] *Jones* involved a slightly different argument than that advanced by Jackson.  In *Jones*, the Petitioner alleged that a statutory aggravator was so similar to a non-statutory aggravator that the two "overlapped" and one factor counted twice.  The argument that an elevator (making a person eligible for the death penalty) improperly serves as an automatic aggravator (suggesting death to be a more appropriate sentence than life imprisonment without parole) arguably would be within the scope of any question regarding the ability of *two* aggravating circumstances to involve the same fact or characteristic of the defendant.

E.    Without waiving the forgoing, the factual averments of Petitioner in paragraphs 184 through 187 are denied, except for those matters established by the state court record.

In denying relief as to this claim, the Alabama Court of Criminal Appeals found:

> The appellant's fifteenth argument is that the trial court improperly treated robbery as both an element of the capital offense and as an aggravating circumstance. This practice is commonly referred to as "double counting" or "overlapping." The appellant specifically contends that "the use of robbery both as an elevator in the guilt-phase *and* as an aggravator in the penalty-phase failed to narrow the class of cases eligible for the death penalty, resulting in the arbitrary imposition of the death penalty." (Appellant's brief at p. 58.) He also contends that this "double counting" punished him twice for the same act, thus violating the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama law.
>
> The appellant makes only bare allegations that his Fourth, Sixth, Eighth, and Fourteenth Amendment rights were violated. Therefore, we will address only his Fifth Amendment argument. Section 13A–5–50, Ala.Code 1975, provides, in pertinent part:
>
> > "The fact that a particular capital offense as defined in Section 13A–5–40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A–5–49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
>
> Accordingly, under § 13A–5–50, Ala.Code 1975, a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in § 13A–5–49, Ala.Code

1975, as an aggravating circumstance. Further, this court has held that the use of an element of capital murder as an aggravating circumstance does not punish a defendant twice for the same offense. *Burton v. State,* 651 So.2d 641 (Ala. Cr. App. 1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).

"'This practice, known as "double counting" or "overlapping," has been upheld. *Haney v. State,* 603 So.2d 368 (Ala. Cr. App. 1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); *Kuenzel* [*v. State,* 577 So.2d 474, 489 (Ala. Cr. App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991) ].

"'Section 13A–5–50, Code of Alabama 1975, states, in part, as follows:

"""The fact that a particular capital offense as defined in section 13A–5–40(a) necessarily includes one or more aggravating circumstances as specified in section 13A–5–49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."

"'Clearly, § 13A–5–50 provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in § 13A–5–49. Further, this court has repeatedly held that the use of an element of capital murder in such a way does not, as the appellant argues, punish a defendant twice for the same offense. *Kuenzel,* supra; see also *Ex parte Kennedy,* 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).

"""A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy."

"'*Kuenzel,* 577 So.2d at 488, quoting *Fortenberry v. State,* 545 So.2d 129, 142 (Ala. Cr. App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).'

"*Burton,* 651 So.2d at 657–58." *Hutcherson,* 677 So.2d at 1201.

Therefore, the appellant's argument is without merit.

*Jackson*, 836 So.2d at 958-959[23] (Vol. 37, Tab # R-90).   The AEDPA bars the relief requested by Jackson.

## O.   JACKSON'S CLAIM THAT ALABAMA'S METHOD OF EXECUTION IS CRUEL AND UNUSUAL PUNISHMENT.

194-195.   This claim for relief in Jackson's Petition is answered as follows:

A.   To the extent Petitioner Jackson failed to develop the factual basis for this claim in state court proceedings, he is not entitled to any further evidentiary hearing in this Court.  Pursuant to 28 U.S.C. § 2254(e)(2), Petitioner is not entitled to an evidentiary hearing in federal court because this claim is not based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual

---

[23] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout.  *Hill,* 697 F.2d at 1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson,* 641 F.2d at 253). This would include the "heightened pleading requirement" applicable to *habeas* petitions. *McFarland,* 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver.") (citation omitted).  Finally, this Court must determine what arguments or theories supported or… *could have supported*, the state court's decision and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court. *Harrington,* 131 S.Ct. at 786 (emphasis added).  Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state court standard was erroneous or merits AEDPA relief warrants denial of this claim.

predicate that could not have been previously discovered through the exercise of due diligence," and because the facts underlying the claim would not be sufficient to establish by clear and convincing evidence that, but for the constitutional error alleged in this claim, no reasonable fact-finder would have convicted Petitioner Jackson or sentenced him to death.

B.     This claim was addressed on its merits and rejected by the Alabama Court of Criminal Appeals during Jackson's appeal from the denial of state post-conviction relief. *Jackson*, 2009 WL 3805808, at *29-30 (Vol. 38, Tab # R-105).  The state court resolution of this issue was neither contrary to, nor an unreasonable application of clearly established federal law.  Further, the State court resolution was based on a reasonable determination of the facts.  Thus, Jackson's Petition must be denied.  *See* 28 U.S.C. §2254(d).

C.     Jackson cannot prevail under the AEDPA as a matter of law. *See Baze v. Rees*, 553 U.S. 35 (2008).

D.     Without waiving the forgoing, the factual averments of Petitioner in paragraphs 194 through 195 are denied, except for those matters established by the state court record.

In denying relief as to this claim, the Alabama Court of Criminal Appeals wrote:

> Recently, in *Thompson v. State,* [Ms. CR–05–0073, February
> 17, 2012] —— So.3d —— (Ala. Crim. App. 2012), this court

105

stated:

> "Effective July 1, 2002, Alabama's primary method of
> execution is lethal injection involving a three-drug protocol.
> Section 15–18–82.1(a), Ala.Code 1975. Section 15–18–
> 82.1(c), Ala.Code 1975, provides: 'A death sentence shall be
> executed by lethal injection, unless the person sentenced to
> death affirmatively elects to be executed by electrocution.'
> Section 15–18–82.1(h), Ala.Code 1975, also provides: 'In
> any case in which an execution method is declared
> unconstitutional the death sentence shall remain in force until
> the sentence can be lawfully executed by any valid method of
> execution.'

> "The constitutionality of Alabama's method of execution has
> been addressed by the United States Supreme Court and the
> Alabama Supreme Court. In *Ex parte Belisle,* 11 So.3d 323
> (Ala.2008), the Alabama Supreme Court stated:

>> "'The Supreme Court upheld the constitutionality of
>> Kentucky's method of execution, *Baze* [*v. Rees*], 553 U.S.
>> [35], 62, 128 S.Ct. [1520] 1538 [170 L.Ed.2d 420 (2008) ],
>> and noted that "[a] State with a lethal injection protocol
>> substantially similar to the protocol we uphold today
>> would not create a risk that meets this standard." *Baze,*
>> [553 U.S. at 61], 128 S.Ct. at 1537. Justice Ginsburg and
>> Justice Souter dissented from the main opinion, arguing
>> that "Kentucky's protocol lacks basic safeguards used by
>> other States to confirm that an inmate is unconscious
>> before injection of the second and third drugs." *Baze,* 553
>> U.S. at 114, 128 S.Ct. at 1567 (Ginsburg, J., dissenting).
>> The dissenting Justices recognized, however, that
>> Alabama's procedures, along with procedures used in
>> Missouri, California, and Indiana "provide a degree of
>> assurance—missing from Kentucky's protocol—that the
>> first drug had been properly administered." *Baze,* 553 U.S.

at 121, 128 S.Ct. at 1571 (Ginsburg, J., dissenting).

"'The State argues, and we agree, that Belisle, like the
inmates in *Baze,* cannot meet his burden of demonstrating
that Alabama's lethal-injection protocol poses a substantial
risk of harm by asserting the mere possibility that something
may go wrong. "Simply because an execution method may
result in pain, either by accident or as an inescapable
consequence of death, does not establish the sort of
'objectively intolerable risk of harm' that qualifies as cruel
and unusual." *Baze,* 553 U.S. at 50, 128 S.Ct. at 1531. Thus,
we conclude that Alabama's use of lethal injection as a
method of execution does not violate the Eighth Amendment
to the United States Constitution.'

"11 So.3d at 339.

"Alabama's method of lethal injection does not constitute cruel
and unusual punishment, and Thompson is not entitled to relief
on this claim."

*Jackson,* 2009 WL 3805808, at *29-30[24] (Vol. 38, Tab # R-105). The court

then stated that it found Jackson's substantive claim that lethal injection

constituted cruel and unusual punishment to be without merit.

---

[24] The burden in this proceeding is on the Petitioner and remains on the Petitioner throughout. *Hill,* 697 F.2d at
1036 ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson,* 641 F.2d at 253).
This would include the "heightened pleading requirement" applicable to *habeas* petitions. *McFarland,* 512 U.S. at
856 ("Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and
comply with this Court's doctrines of procedural default and waiver.") (citation omitted). Finally, this Court must
determine what arguments or theories supported or… *could have supported,* the state court's decision and then must
ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the
holding in a prior decision of the United States Supreme Court. *Harrington,* 131 S.Ct. at 786 (emphasis added).
Accordingly, Jackson's failure to set forth facts or argument in his petition *specifically* demonstrating that the state
court standard was erroneous or merits AEDPA relief warrants denial of this claim.

Respectfully submitted on this the 25th day of November, 2013,

/s/ James R. Houts
James R. Houts (ASB-1321-T77J)
*Alabama Assistant Attorney General*
 State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL  36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637
Email: jhouts@ago.state.al.us

## CERTIFICATE OF SERVICE

I certify that on November 25, 2013, I served a copy of the foregoing brief upon counsel for the Petitioner by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically  transmitted to the Hon. Angela L. Setzer, Esq. and Randall S. Susskind, Esq.   The foregoing was served on the following non-CM/ECF participants:  None.


/s/ James R. Houts
James R. Houts (ASB-1321-T77J)
*Alabama Assistant Attorney General*
 State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL  36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637
Email: jhouts@ago.state.al.us